Lisa Dixon EATON *v.* Robbie Gail DIXON

CA 99-265 9 S.W.3d 535

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered January 12, 2000

*Page, Thrailkill, & McDaniel*, by: *Danny Thrailkill* and *Patrick McDaniel*, for appellant.

*Bob Keeter*, for appellee.

JOHN MAUZY PITTMAN, Judge. The parties in this child-custody case were divorced by a decree of May 12, 1997, that awarded them joint custody of their five-year-old daughter, Ashlie, with appellant being the primary physical custodian. Because of her drug and alcohol abuse, appellant became unable to properly care for the child. On December 23, 1997, she delivered the child to the home of appellee and entered an inpatient drug and alcohol detoxification program, where she remained until May 1998. On January 7, 1998, appellee filed a petition seeking both temporary and permanent custody of the child. After a hearing in October 1998, the chancellor granted appellee primary physical custody of the child. From that decision, comes this appeal.

For reversal, appellant contends that the trial court erred in finding that a material change in circumstances had occurred since the time of the divorce decree, and in finding that awarding custody to the appellee was in the best interests of the child. We find no error, and we affirm.

 Our standard of review is well settled. On appeal from a chancery court case, we consider the evidence *de novo*, and we will reverse the chancellor's findings of fact only if they are clearly contrary to the preponderance of the evidence. *Thigpen v. Carpenter*, 21 Ark. App. 194, 730 S.W.2d 510 (1987). Because the question of the preponderance of the evidence turns largely on the credibility of the witnesses, the appellate court defers to the superior position of the chancellor, especially in those cases involving child custody. *Anderson v. Anderson*, 18 Ark. App. 284, 715 S.W.2d 218 (1986). Custody is not awarded to reward or punish either parent. *Ketron v. Ketron*, 15 Ark. App. 325, 692 S.W.2d 261 (1985). The primary consideration in awarding the custody of a child is the child's welfare and best interest, and other considerations are secondary. *Scherm v. Scherm*, 12 Ark. App. 207, 671 S.W.2d 224 (1984).

 We first address appellant's argument that the chancellor erred in finding a material change in circumstances. A judicial award of child custody should not be modified unless it is shown that there are changed conditions that demonstrate that a modifica-

tion of the decree is in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the chancellor or were not known by the chancellor at the time the original custody order was entered. *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999). In the present case, the appellant admitted that, since the original custody order was entered, appellant had become unable to care for the child, voluntarily surrendered custody of the child to the appellee, and entered an inpatient alcohol and drug detoxification program where she remained for six months. Appellant also admitted that, since the original custody order was entered, she had been convicted of DWI and public intoxication, and had pled guilty to three counts of forgery in the second degree. Finally, appellant admitted that, since the original custody order was entered, appellant had married her current husband, Brandon Eaton, a felon who spent time in federal prison on racketeering charges related to marijuana cultivation. Although we agree with appellant's assertion that her circumstances were not good at the time the decree was entered, these events unquestionably constitute a material change in circumstances affecting the best interest of the child, and we hold that the chancellor did not err in so finding. *See id.*

■ ■ Appellant next contends that the chancellor erred in finding that awarding custody to the appellee was in the best interests of the child. This question is more difficult because the record shows that appellee's character and ability to care for the child are also questionable. There was evidence that appellee, too, has a history of criminal activity and alcohol abuse. There was, quite clearly, no ideal solution available to the chancellor in this case. Nevertheless, it appears that appellee's situation has at least been more stable than appellant's in recent years, and although there is evidence that appellee has consumed alcohol in the presence of the child, he has, at least, not required recent and extensive detoxification. While we do not agree with appellant's argument that the record mandates a conclusion that appellee's work schedule is such that an award of custody to him is a *de facto* award of custody to the child's stepmother, the record does reflect that appellee's current wife has developed a strong, nurturing relationship with the child and appears to be a very positive influence. Furthermore, although awarding custody of the child to the appellee will result in the separation of the child from a half-sibling who remains in appellant's

custody, the prohibition against separating siblings in the absence of exceptional circumstances does not apply with equal force in cases where the children are half-siblings. *Riddle v. Riddle*, 28 Ark. App. 344, 775 S.W.2d 513 (1989). The situation is similar to that presented in *Respalie v. Respalie*, 25 Ark. App. 254, 756 S.W.2d 928 (1988), where we said that:

> The chancellor was in a superior position to assess the situation and the effect appellee's conduct would have on the children's welfare. We have often recognized that there is no case in which greater deference should be given the chancellor's position, ability and opportunity to see and evaluate the evidence than those involving the welfare of minor children. *Calhoun v. Calhoun*, 3 Ark. App. 270, 625 S.W.2d 545 (1981). Chancellors cannot always provide flawless solutions to unsolvable problems, especially where only limited options are available. Although the conditions in which these children are placed are not ideal, we cannot conclude that the chancellor's order does not more adequately provide for the welfare of these children than any option then available to him.

*Respalie*, 25 Ark. App. at 257, 756 S.W.2d at 930.

Affirmed.

NEAL, GRIFFEN, STROUD, and JENNINGS, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting. The court, in the guise of changing custody from the natural mother to the natural father, granted *de facto* custody of Ashlie to the stepmother without finding the natural mother to be unfit. Appellee testified that he works in Houston, Texas, leaving Ashlie in the care of his present wife from approximately 2:00 p.m. each Sunday until he arrives home around midnight Thursday night. Appellant has Ashlie on alternate weekends from 6:00 p.m. Friday to 6:00 p.m. Sunday. Thus, Ashlie sees appellee from the time school is out until Friday at 6:00 p.m. one week, and the next week, Ashlie sees appellee before school on Friday and after school on Friday until Sunday at 2:00 p.m. In sum, during a typical two-week time period, Ashlie is in her mother's care two days, her father's care approximately three days, and in her stepmother's sole care approximately nine days. Further, according to the testimony, the stepmother's approval must

be gained before appellant can speak with her child on the telephone.

A parent should have custody before all others, unless the parent is shown to be incompetent or unfit. *Ideker v. Short*, 48 Ark. App. 118, 892 S.W.2d 278 (1995). This preference applies even where the child has adjusted well to an alternative living situation. *Id.* In *Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988), our supreme court found that although the stepfather was the only father the child had ever known, the chancellor erred by awarding joint custody as the mother was a fit parent. Even one standing *in loco parentis* to a child must show the natural parent unfit to prevail on a custody issue because of the law's preference for the natural parent over all other custodians. *Golden v. Golden*, 57 Ark. App. 143, 942 S.W.2d 282 (1997). "Obviously, the natural mother, in the absence of evidence of moral or general unfitness, should always be preferred over a stepmother." *Roberts v. Roberts*, 226 Ark. 194, 196–197, 288 S.W.2d 948, 950 (1956).

Here the chancellor did not find that the mother was unfit nor was evidence presented that appellant was unable to care for the child. Appellee's action to modify custody was not initiated until after appellant entered a drug-treatment program to deal with her admitted addiction. No evidence was presented that appellant continued to abuse drugs or alcohol after receiving this treatment. On the other hand, evidence was presented that appellee has engaged in criminal activity while out drinking with his co-workers and that he continues to patronize bars.

Appellee neither offered to seek employment closer to his daughter, nor requested permission to remove Ashlie from the State so that he could care for her while maintaining his current employment. Instead, appellee made the chancellor aware that he worked out-of-state and that the stepmother would be Ashlie's primary caretaker. Nevertheless, the court granted physical custody to appellee. Thus, the chancellor awarded *de facto* custody to the stepmother under the auspices of awarding custody to appellee. The law preferring the natural parent over all others as the custodian should not be circumvented in this manner.