Liza Michelle GEROT *v.* Paul Alan GEROT

CA 01-448 61 S.W.3d 890

Court of Appeals of Arkansas
Division II
Opinion delivered December 5, 2001
[Petition for rehearing denied January 30, 2002.]

140

*William F. Smith*, for appellant.

*Laws & Murdoch, P.A.*, by: *Allen Laws*, for appellee.

WENDELL L. GRIFFEN, Judge. Lisa Gerot appeals from a chancery order granting the appellee's petition for a change of custody, denying her petition to relocate to Florida with her minor child, and dismissing her request for a contempt citation pursuant to the court's order mandating the division of certain marital property. She argues that appellee failed to demonstrate a material ·change in circumstances justifying a change in custody; that the chancellor did not consider the proper factors in determining whether to grant her petition to relocate; and that it was undisputed that appellee has not divided the property as ordered by the court.

We reverse the order granting appellee's motion for a change of custody because there was no allegation or proof of a material change of circumstances warranting a change of custody. In addition, because the chancellor based his finding on the motion for a change of custody and made no ruling on appellant's petition to relocate, we remand for a ruling in that respect. Finally, we affirm with respect to the chancellor's dismissal of the contempt citation.

Appellant obtained a divorce from Paul Gerot, appellee, on October 20, 1999. Appellant was granted custody of their nine-

year-old daughter, Victoria ("Tory"), and appellee was awarded visitation. The chancellor ordered appellee to equally divide the parties' A.G. Edwards stock, to equally divide his 401k account, and to sell his Harley-Davidson motorcycle within ninety days and split the proceeds with appellant.

In January 2000, appellant, who is a registered nurse, accepted a job in Pal Bay, Florida. In March 2000, she filed a petition to relocate to Florida, citing as her reasons for relocating a substantial increase in earnings, a job requiring her to work fewer hours per week that would allow her increased time with Tory, and better educational and extracurricular opportunities for Tory. She also requested that visitation be modified to ensure "continued quality time" with appellee. Because appellant did not want to move Tory during the school year, the parties agreed that she would stay with appellee until after the current school year had ended and he had exercised his summer visitation.

On April 4, 2000, appellee filed a formal objection to the move. He asserted that he had maintained a strong relationship with Tory and that it was not in Tory's best interest to move to Florida while she was attending school. On April 15, 2000, appellant moved to Florida, and pursuant to the parties' agreement, Tory remained in Arkansas with appellee.

On June 13, 2000, after appellee's summer visitation had ended, he filed a petition for a change of custody. He cited the fact that appellant had recently relocated to Florida and asserted that he has maintained a strong relationship with Tory, including participation in her school activities, in an effort to create a stable environment for her. On July 11, 2000, appellant filed a contempt citation, alleging that appellee had failed to divide the stock, failed to divide his retirement account, and failed to sell his motorcycle. He conceded the terms of the property settlement and that appellant was entitled to one-half of the stock and the retirement account, but denied any willful violation of the court's order.

A hearing on these matters was held on December 20, 2000. The chancery court dismissed appellant's petition for contempt and granted appellee's request for a change of custody. After appellant requested that the court provide specific findings of fact, the chancellor orally indicated his specific findings of fact. The chancellor stated:

> I feel it is in the best interest of the child. I think the evidence is clear from the testimony of the teachers that the child is doing quite well and it would not be in her best interest to remove her from the situation she is in now. Furthermore, she has extended family on both sides here. And it was Mrs. Gerot's choice to move to Florida. I think it is clearly, in my opinion, in the best interest of the child to remain here at this time.

The chancellor reiterated these findings in his subsequent written order.

The court further ordered appellee to obtain three bids on his motorcycle; to sell his motorcycle within the next thirty days and divide the proceeds accordingly; and to inform appellant of all documentation necessary to prepare a Qualified Domestic Relations Order to divide the stock and retirement funds as previously directed.

Appellant subsequently filed a motion to reconsider and a motion for a new trial, which the chancellor denied. She appeals only from the order entered on December 20 dismissing her motion for contempt and granting appellee's petition for a change of custody.

## I. Summary of the Testimony

Appellee conceded that he and appellant originally agreed that Tory would stay with him only until after he exercised his summer visitation. However, he subsequently objected to Tory moving to Florida "because she's content, she's happy here, her friends are here, her school is here and her family is here." He lives with his mother and father in their house, but testified that his parents intend to give the house to him. Appellee asserted that he has a close relationship with Tory. He also stated that he has a good relationship with appellant's parents and that Tory visits them. Appellee stated that Tory did not talk about her mother often and did not appear to be having any problems with her mother living in Florida.

Appellee also testified that Tory earns As and Bs in school. He stated that he has lunch at school with Tory three to four times per week and participates in parent-teacher conferences. Appellee testified that he and Tory love fishing and that he takes her to a members-only hunting lodge three weekends of each month.

Appellant is a registered nurse. She works in an emergency room, serving three twelve-hour shifts per week, from 7:00 a.m. to 7:00 p.m. She felt that Florida offered "more opportunities" for her daughter, including the ocean, Sea World, theme parks, and the Kennedy Space Center. At the hearing, she presented a letter from her employer stating that she would initially earn $21.30 per hour and would receive a $3,000 sign-on bonus. She testified that she would earn ten to twelve thousand dollars more per year, she would work fewer hours, and that the cost of living was less expensive in Florida. Appellant would also be able to return to college herself at a lower cost through her employer. She purchased a three-bedroom home located five minutes from Discovery Elementary, which she asserted was a highly rated school. She has made arrangements for a babysitter and transportation to school on those days that she is working. Appellant also has a longtime friend who resides in Pal Bay, whom Tory knows, who is also willing to help appellant if needed.

She stated that she left Tory with appellee because she did not want to move her during the middle of a school year and that her attorney indicated that she would receive permission from the court to relocate "within about thirty days." She testified that she talks to Tory on the phone twice each week and that she had visited Tory three times since April 2000. Appellant also testified that she likes fishing and that she and Tory can salt water fish in Florida.

Appellant maintained that she has always encouraged visitation and wants Tory to have fair visitation with her father. Appellee felt that it was important for Tory to "have all of her family." She indicated that she would pay for one-half of the travel expenses to bring Tory back to Arkansas to visit her father. She also planned to return to Arkansas with Tory at least twice per year. She stated that Tory had asked her to take her to Florida the last time that appellant was in Arkansas.

Marvelle Converse, Tory's teacher at the time of the hearing, testified that Tory maintains a B average, and that appellee eats lunch with her three to four times a week and picks her up every afternoon. Her impression was that they have an "enjoyable relationship." She stated that appellee serves as a "room mother" and has gone on some of the outings with Tory's class. Converse said that appellee attends parent-teacher conferences and is very active in Tory's education. She stated that Tory is well-adjusted, active in the classroom, and plays well with her peers. She testified that it would be detrimental to move Tory during the middle of a school year.

Susan Wilson, Tory's second-grade teacher, who taught Tory during the period in which appellee moved, testified that Tory's relationship with her father was very loving; that they had a strong bond; and that Tory seemed to be very comfortable in her father's care. She testified that appellee visits school on Monday, Wednesday, and Friday and brings Tory's lunch; that he also stays to play with her after lunch; and that he picks her up from school.

She further stated that prior to April 2000 (when Tory began living with appellee), Tory "didn't focus. . . . The last part of school when living with her father she was more active. She seemed to be a little more with it. She participated in conversations . . . She seemed more comfortable." Wilson said that Tory did not participate in class at the beginning of the school year, although she was always very active at recess. Wilson said that Tory became more relaxed from the beginning of the school year to the end of the school year; that she talked more; that she formed friendships; "that her activities in class and with her peers became stronger as she grew older." She stated that Tory became more self-confident as the school year progressed. She opined that "moving in with her father was what made the changes." Wilson also said that Tory told her in May 2000 that she did not want to move to Florida.

Debbie Nordin, Tory's first-grade teacher, said that when she taught Tory, she was sullen, quiet, and lacked self-confidence, whereas now, she seems happy and more confident. Nordin stated that both appellant and appellee attended parent-teacher conferences. She stated that she had seen Tory several times in the period from January to May 2000, and that Tory "appears happy and stable. She has really come out and come into her own this year." Nordin has seen appellee eat lunch with Tory and pick her up from school. She stated that it appears that they have a strong bond. She said that Tory has changed since she moved in with her father, but conceded that Tory is three years older now than when she taught her and that children's personalities change as they grow. She also admitted that she has not talked to Tory in the last year.

## II. Change of Custody

■ ■ We first address the chancellor's error in finding that appellee demonstrated a material change in circumstances warranting a change of custody. We review chancery cases *de novo* and reverse the findings of the chancellor only if his findings are clearly erroneous. *See Hickmon v. Hickmon*, 70 Ark. App. 438, 19 S.W.3d

624 (2000). Custody should not be changed unless conditions have altered since the decree was rendered or material facts existed at the time of the decree but were unknown to the court, and then only for the welfare of the child. *See Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.3d 105 (1999). The chancellor must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, he must then determine who should have custody with the sole consideration being the best interest of the child. *See id.*

 A custodial parent's move that is made in order to better his or her financial ability to provide for a child is not, in and of itself, a material change in circumstances to be used to the detriment of that parent. *See Hollinger v. Hollinger, supra*. However, such a move is one factor which may be considered when determining whether a material change in circumstances exists. *See Hollinger v. Hollinger, supra*. The party seeking the modification has the burden below to show a material change of circumstances sufficient to warrant a change in custody. *Hollinger v. Hollinger, supra*. While custody is always modifiable, our courts require a more rigid standard for modification than for initial determinations in order to promote stability and continuity for the children and to discourage repeated litigation of the same issues. *See Stellpflug v. Stellpflug*, 70 Ark. App. 88, 14 S.W.3d 536 (2000).

Appellee maintains that the change of circumstances in this case are demonstrated by appellant's relocation to a place where neither she nor Tory have any "roots" and by Tory's "dramatic change" in her attitude since she moved in with him. Appellant notes that the court failed to specify any finding of a material change in circumstances in its oral or written order and maintains that the only testimony offered by appellee was offered as if he were already the custodial parent and is not sufficient to show a change of circumstances to warrant a change in custody.

 We agree that the chancellor erred in granting appellee's motion for a change of custody where the appellee failed to allege or present evidence of a material change of circumstances sufficient to warrant a such a change. The only change in circumstances that occurred from October 20, 1999, the date of the original custody order, to the date of the hearing, was that appellant voluntarily left Tory with appellee so she could finish out the school year. However, relocating in order to obtain employment itself does not

constitute a material change in circumstances. *See Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996).[1] Nor does the fact that appellee would not get to visit Tory as often. *See Plum v. Plum*, 252 Ark. 340, 478 S.W.2d 882 (1992).

Appellee also maintains that his testimony and that of Tory's teachers demonstrates a "dramatic change" in Tory's demeanor since she began living with him. He testified that Tory was happy and content living with him, and it is undisputed that they share common interests, such as the love of outdoor pursuits.

■ It is implicit in the chancellor's original order awarding custody to appellant that Tory had a good relationship with her father but was happy and content in appellant's care. Appellee presented no evidence that this has changed. Rather, the evidence shows that Tory continues to enjoy a good relationship with both parents. Appellee did not seek custody on the ground that appellant was an unfit mother. He simply maintained that he was close to Tory and that she was happy and content with him. *See Barnes v. Newton*, 69 Ark. App. 115, 10 S.W.3d 472 (2000) (holding, in part, that there were no material changes in circumstances to justify changing joint-custody order to award custody to the mother where there was no allegation that either parent was unfit). Moreover, while the evidence demonstrates that appellee has taken a more active role with regard to Tory's education since she moved in with him and that Tory is doing well in school, the evidence also showed that both appellant and appellee were actively involved in Tory's education prior to appellant's relocation. Thus, appellee's assertion that he is close to Tory, that she is happy in his care, and that he is actively involved in her education does not demonstrate a material change in circumstances.

Similarly, the testimony by Tory's teachers regarding Tory's progress in school does not justify a change of custody. Tory's

---

[1] Appellee maintains that the facts in this case are similar to the facts in *Riley v. Riley*, 45 Ark. App. 165, 873 S.W.2d 564 (1994), in which this court affirmed a change in custody, where both parents had remarried and the custodial parent moved the children several hundred miles away from the children's extended family. However, the facts in *Riley* are easily distinguished from the facts in this case. In *Riley*, both parents had remarried and the mother surreptitiously moved the children without the father's knowledge and returned to the state on two occasions but did not allow visitation with the father on those occasions. *See id.* Here, by contrast, neither parent has remarried; appellant discussed the move with appellee beforehand; and appellant appeared to be following the court's order in not removing Tory from the state until she received the court's approval. By contrast, appellee violated the custody order by keeping Tory beyond her summer visitation.

teacher at the time of the hearing, Ms. Converse, stated that Tory is well-adjusted, active in the classroom, plays well with her peers, and opined that it would be detrimental to move Tory during the middle of a school year. While Wilson, Tory's second-grade teacher, opined that Tory's change in attitude was attributable to her new living arrangements with her father since mid-April 2000, she also stated that she had noticed changes *since the beginning of the school year*. Further, she directly observed Tory's demeanor after she moved in with her father for only a short time, from mid-April until the end of May, when the school year ended. Although Nordin, Tory's first-grade teacher, has not spoken with Tory within the past year, she testified that Tory has "come into her own this year." Nordin apparently based her conclusions on seeing Tory around the school. Further, Nordin's comments, as well as common sense, demonstrate that Tory's change in demeanor is just as likely the result of her normal maturation process.

Further, while it is certainly proper for the chancellor to consider the child's happiness and progress in school, *see Barnes v. Newton, supra*, the testimony showed that Tory maintained an A–B average both before and after she moved in with her father. According to her teachers' testimony, she also played well with other children at recess before and after she moved in with her father. While her personality changed during the months prior to and immediately after the petition for a change in custody, this appears to be due, at least in part, to the natural maturation process and not simply to the fact that she moved in with her father late in the school year.

Even giving due deference to the witnesses' testimony, their testimony does not demonstrate a material change that would justify a permanent change in custody. Because the chancellor erred in granting the motion for a change of custody in the absence of an allegation or proof of a material change warranting a change of custody, we reverse that portion of the chancellor's order.

### III. Petition to Relocate

Further, we remand for reconsideration of appellant's petition to relocate because we find the chancellor based his decision solely

on the motion for a change of custody and failed to rule on appellant's petition to relocate.[2]

After the court issued its decision, appellant's attorney requested specific findings of fact pursuant to Arkansas Rule of Civil Procedure 52(b)(2) stating, "Your Honor, can we ask for a finding of fact?" The chancellor indicated:

> I feel it is in the best interest of the child. I think the evidence is clear from the testimony of the teachers that the child is doing quite well and it would not be in her best interest to remove her from the situation she is in now. Furthermore, she has extended family on both sides here. And it was Mrs. Gerot's choice to move to Florida. I think it is clearly, in my opinion, in the best interest of the child to remain here at this time.

 In determining whether to grant a petition to relocate, the chancellor must first determine whether a move would result in a real advantage to the family as a whole. *See Hass v. Hass*, 74 Ark. App. 49, 44 S.W.3d 773 (2001). The record supports that the chancellor limited his order to the grant of appellee's motion for a change of custody because he only examined the best interest of the child, without regard for the best interests of the family unit as a whole. Absent from the record and from the chancellor's oral and written findings is any indication that he ruled on appellant's petition to relocate or even considered the advantage to the family unit as a whole. Accordingly, we remand to the chancellor for a ruling on appellant's petition to relocate.

## IV. Dismissal of the Contempt Citation

Finally, we affirm the chancellor's dismissal of appellant's petition for a contempt citation. The chancellor entered an order on October 30, 1999, ordering appellee within ninety days to equally

---

[2] Appellee asserts that appellant's argument in this regard is barred, pursuant to *Hickmon v. Hickmon*, 70 Ark. App. 438, 19 S.W.3d 624 (2000), because she failed to specifically request findings on the factors supporting the court's "denial" of her petition to relocate. We disagree that *Hickmon* compels such a result.

The instant case is distinguishable from *Hickmon*. Unlike the appellant in the instant case, it appears that the *Hickmon* appellant failed to make *any* request for findings of fact. Here, despite a request for specific findings of fact, the chancellor failed to rule on appellant's petition to relocate. Accordingly, *Hickmon* does not preclude us from addressing the merits of appellant's argument.

divide the parties' A.G. Edwards stock, to equally divide his 401k account, and to sell his Harley-Davidson motorcycle and split the proceeds with appellant. It is undisputed that as of July 11, 2000, the date that appellant filed her motion for contempt, appellee had not complied with this order.

Appellee concedes that at the time of the hearing, he had not complied with the court's order. However, the failure to comply was apparently due to appellee's attorney's failure to act, not appellee's. Appellee's attorney informed the court that appellee had supplied him all of the necessary information to prepare the QDRO and that appellee stipulated that appellant was entitled to one-half of the stock and retirement account. While the chancellor could have imputed appellant's attorney's negligence to appellee, *see Midwest Timber Prod. Co., Inc. v. A.A. Self*, 230 Ark. 872, 327 S.W.2d 730 (1959), he apparently found the attorney's inaction was not willful, and appellant offered no proof to the contrary.

With regard to the motorcycle, appellee testified that it was "tore apart" and that he did not have the money to repair it. He also testified that he had advertised the motorcycle for sale twice in the *Arkansas Democrat-Gazette*, and had made inquiries at the Road House, a local motorcycle shop, but received no suitable offer.

▮ The purposes of civil contempt are to preserve and enforce the rights of private parties to suits and to compel obedience to orders made for the benefit of those parties. *Arkansas Dep't Of Human Servs. v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998). The standard of review where the chancellor has refused to punish a contemnor is abuse of discretion. *See Jones v. Jones*, 320 Ark. 449, 898 S.W.2d 23 (1995). Based on the foregoing facts, we hold the chancellor's finding that appellee's failure to comply with the October 30 order was not willful was not an abuse of discretion. Accordingly, we affirm with respect to the chancellor's dismissal of the contempt citation.

We reverse the order granting appellee's motion for a change of custody. We also remand for a ruling with respect to appellant's petition to relocate. We affirm the dismissal of the contempt citation.

Affirmed in part; reversed in part; and remanded in part.

BIRD and CRABTREE, JJ., agree.

## SUPPLEMENTAL OPINION on DENIAL of REHEARING

CA 01-448 65 S.W.3d 494

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered January 30, 2002

*William F. Smith*, for appellant.

*Laws & Murdoch, P.A.*, by: *Allen Laws*, for appellee.

WENDELL L. GRIFFEN, Judge. Appellee Paul Gerot petitions for rehearing from an unpublished opinion rendered by this court, reversing in part a chancery order awarding him a change of custody and granting him primary custody of his daughter, Victoria ("Tory").[1] We deny appellee's petition for rehearing and reiterate our holding in this case with regard to his petition to change custody.

---

[1] *See Gerot v. Gerot*, 76 Ark. App. 138, 61 S.W.3d 890 (2001). We also affirmed that portion of the chancellor's order dismissing a contempt petition against appellee, and remanded for a ruling on appellant's petition to relocate.

In this case, appellant Lisa Gerot, appellee's ex-wife and Tory's mother, moved to Florida because she was offered a better job with a larger salary and more flexible hours that would allow her to spend more time with Tory. Tory remained with her father in Arkansas to complete the remainder of her school year. Appellant thereafter filed a petition to relocate and a contempt petition, alleging that appellee failed to divide certain property in accordance with the parties' divorce decree. Appellee filed a petition for a change of custody, alleging that Tory had experienced a "dramatic change" in her attitude after she moved in with him. At the hearing, appellee testified regarding Tory's alleged "dramatic change" and also offered testimony by Tory's teachers to that effect.

We stated that the testimony offered by appellee did not demonstrate a "dramatic change" that would justify a permanent change in custody. Therefore, we held that appellee failed to prove a material change in circumstances and we reversed that portion of the chancellor's order granting appellee primary custody of Tory.

■ Appellee now asserts that in stating he failed to demonstrate a "dramatic change" that would justify a permanent change in custody, we either misstated or misapplied the law regarding the proof required to establish a change of custody. However, a full reading of our holding demonstrates that we did not misstate or misapply the correct standard governing motions to change custody. The standard regarding motions for change of custody, as we cited in our prior opinion in this case, is well-settled: Custody should not be changed unless conditions have altered since the decree was rendered or material facts existed at the time of the decree but were unknown to the court, and only for the welfare of the child. *See Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999).

Here, appellee maintained that Tory's "dramatic change" in her attitude warranted a change in custody. We stated our holding, in full, as follows:

> Even giving due deference to the witnesses' testimony, their testimony does not demonstrate a "dramatic change" that would justify a permanent change in custody. Because the chancellor erred in granting the motion for a change in custody in the absence of an allegation or proof of a material change warranting a change of custody, we reverse that portion of the chancellor's order.

 Thus, we held that, appellee's "dramatic change" argument notwithstanding, appellee failed to allege or prove facts demonstrating a *material change* in circumstances necessary to warrant a change in custody. Our decision did not change the well-settled proper standard governing motions for change of custody. Appellee's petition for rehearing raises no new issues of law and provides no additional grounds for consideration.

Petition for rehearing denied.

ROAF, J., concurs.