Jeanette MIDDLETON *v.* Heath MIDDLETON

CA 03-122                                                        113 S.W.3d 625

Court of Appeals of Arkansas
Division III
Opinion delivered August 27, 2003

*Bill E. Bracey, Jr.*, for appellant.

*Mikke Connealy*, for appellee.

OLLY NEAL, Judge. This is an appeal from an order of the circuit court granting a change of custody to the appellee, Heath Middleton. Appellant, Jeanette Middleton, asserts that the court erred in transferring custody of her child, M.M., to the appellee and that the transfer of custody was not in M.M.'s best interest. We reverse and remand.

Jeanette Middleton and Heath Middleton divorced on April 7, 2000. By agreement, the parties stipulated that, although both were fit parents, appellant would retain primary care, custody, and control of M.M. The parties also agreed that if appellant moved more than fifty miles from Blytheville, she would either pay one-half of the transportation expenses or meet appellee at a half-way point.

On August 9, 2002, appellant filed a petition to relocate with M.M. to Decatur, Alabama. Pursuant to the parties' agreement, appellant also sought permission of the court to meet appellee in Corinth, Mississippi, for his scheduled visitations, the point that she believed was half-way.[1] Thereafter on August 13, 2002, appellee filed a motion requesting the court to order that appellant refrain from moving M.M. out of state. The trial court entered an order to that effect on August 13, 2002, but vacated the order on August 19, 2002, in an effort to allow M.M. to attend her first day of school in Decatur on August 20, 2002. However, the trial court ordered appellant to have M.M. back in the State of Arkansas for the subsequent hearing on August 23, 2002.

On August 20, 2002, appellee filed a petition to modify custody, alleging that since the entry of the divorce decree, there had been a material change of circumstances, including the facts that appellant had moved the child from Blytheville, Arkansas, where she had no family, that appellee had been kept from M.M. for weeks at a time, and that all of M.M.'s family lived in Arkansas and she would have no family in Alabama.

A hearing on appellee's petition for change of custody was held on August 23, 2002. At the hearing, appellee testified that M.M. is the product of his marriage to appellant. Appellee testified that after he and appellant divorced, he kept M.M. most of the time. He and his new wife recorded on a calender that they kept M.M. forty-eight percent of the time in February 2001, forty-three percent of the time in March 2001, forty-five percent of the time in April 2001, and thirty-eight percent of the time in May 2001. Appellee determined that M.M. was with him forty-eight percent of the time in 2001 and with appellant thirty-three percent of the time. Appellee stated that M.M. was with his parents or somewhere else the rest of the time.

Appellee testified that he picked M.M. up from school ninety-eight percent of the time when she lived in Gosnell and that he and his wife attended most of her school functions, church activities, and PTA meetings. He stated that he and his wife also went to the parent-teacher conferences. Appellee recalled that

---

[1] The trial court rendered the question of permission to move moot and *sua sponte* modified the visitation schedule to afford appellee visitation every weekend except the third weekend of every month.

M.M. was baptized at the Gosnell Baptist Church and that she sang "God Bless America" there one Fourth of July and that appellant attended neither of these events.

Appellee stated that appellant would drop M.M. off at his house and M.M. would "smell like she didn't have a bath and would have the same underwear on that I put on her 2 days earlier." He further stated that M.M. had allergies and that the doctor recommended that he and appellant quit smoking; although he quit, appellant had not.

Appellee testified that from March 2001 to July 2001, he and his wife lived with her parents until her aunt moved out of the trailer that was located next to his in-laws' home. He stated that he and his wife have a son, who was born before they were married. He also stated that they have "four or five acres and a lot of [his wife's] kinfolk live right in that area with twenty or twenty-five children and three or four right there for [M.M.] to play with." He noted that he eventually planned to build a house on the land.

Appellee acknowledged that in September 2000, he received a DWI, but stated that he had not had any problems since that time. He said that his work schedule was four days on and four days off, working eight o'clock in the morning until eight o'clock in the evening, then off for four days and working eight o'clock in the evening until eight o'clock in the morning. Finally, appellee stated that M.M. needed to live with him "because I don't think her mother gives her the care that she needs . . . [and because] [b]etween me and my wife Mindy, M.M. will have [the] stability that she needs[.]"

Appellant testified that she accepted a job in Decatur, Alabama, making a salary of $2,000 a month plus commission, which she did not receive in Blytheville. She stated that she used to drink beer, but that she had not had a drink in over five months. Appellant acknowledged that she went to Decatur, Alabama, to visit some friends, liked it, and decided to look for a job there. She said that she does not have blood relatives in Decatur, Alabama, but that M.M. has known her friends since birth and that M.M. called them "aunt and uncle." Appellant related that she had not quit smoking entirely, but that she was down to three cigarettes a day.

Appellant further testified that at her apartment in Decatur, M.M. had her own bedroom equipped "with everything a little

girl could want." She stated that because M.M. visited her father almost every weekend, she and M.M. had not had a chance to do many activities. Appellant testified that she was not an active member of the PTA, but that she did attend the first and last parent-teacher conferences. She noted that she did not go to see her daughter sing "God Bless America" because she was not invited and did not know about it until afterwards. She also stated that she did not know about M.M.'s baptism "until [M.M.] came home with wet hair and I bawled." Appellant stated that she always kept M.M. bathed and clean. She felt that "it is not in Heath[']s best interest to have primary custody because of his work schedule and [M.M.] would be with her step-mother the majority of the time."

Several other people testified at the hearing. Among them were Cyndy Byrd, M.M.'s first grade teacher, who testified that M.M. would draw family pictures of her new brother, appellee, and his wife, but never of appellant. She stated that Heath and his wife attended all of the parent-teacher conferences and that appellant came to the first one. She further testified that she would contact parents four times a year and that on two of those times, she spoke with appellant while on the other two, she spoke with appellee's new wife.

M.M. testified that she was seven and-one-half years old and that she liked going to school at "June and Harris" in Decatur, Alabama. She stated that she had her own bedroom and everything that she needed. She also stated that although she liked visiting her dad, she would "rather spend the night with [her] mom and go to school because [she] really like it [there]."

Following the hearing, the trial court, by letter opinion filed September 27, 2002, modified custody. The trial court found that:

> The plaintiff-mother recently moved to Decatur, Alabama, and has secured a job there with a new employer. She testified that she will be earning approximately the same amount with the new employer in Alabama that she earned in Arkansas, but that her potential for commissions are greater. She has no family in Alabama and she moved to Decatur to be with a couple who are friends of hers. Her marriage to defendant was her third marriage. She and her father testified that the child would be afforded more advantages in Decatur owing to better living conditions, shopping centers, parks,

schools, restaurants, and the like. [M.M.]'s teacher testified that when [M.M.] would draw pictures in school the great majority of the time she would draw pictures of her father rather than of her mother. [M.M.] testified in this case and was rather shy and hesitant before the Court, but when asked who she preferred to live with, she stated she wanted to live with her mother. She made that simple statement without being asked anything further. The Court recognizes that a child's preference is to be given some consideration, *Moore vs. Smith*, 255 Ark. 249, but, on the other hand, while the attitudes and wishes of the child are proper for the consideration of the Court, they are not controlling. The Court has to take into consideration whether or not it feels the child is capable of making an intelligent choice. *Carr v. Hall*, 235 Ark. 874. In this case, the Court simply finds and concludes that [M.M.] was so shy and hesitant in her testimony before the Court and she answered the single question asked of her in such a hesitant and shy manner without being asked anything further that the Court cannot find that her response was an intelligent decision.

\* \* \*

The Court has carefully considered this matter and finds on the one-hand that the defendant-father has remarried and has a child by that marriage, who, of course, is related to [M.M.]. He has abundant family in and around Blytheville. The child grew up in Blytheville, was baptized in church here, has attended church here, has attended school here, and only recently was removed from her family and friends to an area where she knows only her mother.

The Court has to take into consideration the fact that her mother has removed her to a town where there is no family upon which she can rely for support and help. She has a new job. Her past involvement in the child's church and school activities has not been as great as have those of the father.

Taking all of these things into consideration, the Court can only find and conclude that circumstances have changed and it is in [M.M.]'s best interests that primary custody be placed with the defendant.

On September 26, 2002, appellant filed a Motion for Reconsideration for New Trial and Stay, alleging, among other things, that the court had made several factual errors, including findings that the parties were awarded joint custody following the divorce and that appellee was awarded visitation every third weekend of each month. By a letter opinion dated October 3, 2002, the trial court corrected its errors, but opined that those corrections did not change his ruling. The court further considered some cases cited by the appellant and distinguished those from the case at hand. The court stated:

> The Court still finds that both parents are fit and proper to have custody of [M.M.], but the remarriage of defendant and birth of a new child, thus providing [M.M.] with a half-sibling, together with plaintiff's move to an area where there is absolutely no family and removal of [M.M.] from an area where she has grown up with family and friends, attended church, and attended school is the primary factor in the Court's making its ruling as it did....

The court memorialized its ruling in a Modification Order filed October 15, 2002. From that order comes this appeal.

In reviewing child-custody cases, we consider the evidence *de novo*, but will not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *See Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003). A finding is clearly against the preponderance of the evidence when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999). We also give special deference to the superior position of the trial court to evaluate and judge the credibility of the witnesses in child-custody cases. *Carver v. May*, 81 Ark. App. 292, 101 S.W.3d 256 (2003). We have often stated that we know of no cases in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as those involving children. *Id.*

Custody should not be changed unless conditions have altered since the decree was rendered or material facts existed at the time of the decree but were unknown to the court, and then only for the welfare of the child. *See Gerot v. Gerot*, 76 Ark. App. 138, 61 S.W.3d 890 (2001). The court must first determine that a

material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the child. *Id.* The party seeking the modification has the burden of showing a material change of circumstances sufficient to warrant a change in custody. *Hollinger v. Hollinger, supra.* A change of circumstances of the noncustodial parent, including a claim of an improved life because of recent marriage, is not alone sufficient to justify modifying custody. *See Hamilton v. Barrett,* 337 Ark. 460, 989 S.W.2d 520 (1999).

There are several instances in which the court should not consider a party's actions, in and of themselves, as a change in circumstances, although they may be considered as factors. One such instance is when the custodial parent moves in order to better his or her financial ability to provide for a child. *See Gerot v. Gerot, supra.* Another is the fact that the appellee would not get to visit with his or her child as often. *See id.*

Furthermore, the attitudes and wishes of the child, although not controlling, are a proper consideration in making an award of custody. *See Norman v. Norman,* 268 Ark. 842, 596 S.W.2d 361 (Ark. App. 1980). Also, the prohibition against separating siblings in the absence of exceptional circumstances does not apply with equal force in cases where the children are half-siblings. *Eaton v. Dixon,* 69 Ark. App. 9, 9 S.W.3d 535 (2000).

On appeal, appellant argues that the trial court erred in finding (1) a material change in circumstances sufficient to warrant a change in custody and (2) that a modification of custody was in M.M.'s best interest. We agree; therefore, we reverse and remand.

Under the facts of this case, we are unable to determine that there was evidence sufficient to warrant a change in custody. As previously stated, appellee had the burden of showing a material change of circumstances sufficient to warrant a change in custody, *Hollinger v. Hollinger, supra,* and a change of his circumstances, including a claim of an improved life because of recent marriage, is not alone sufficient to justify modifying custody. *See Hamilton v. Barrett, supra.* Nor does the fact that appellee has a new child equate into a change of circumstances, as the prohibition against separating siblings in the absence of exceptional circumstances does not apply with equal force in cases where the children are half-siblings.

*Eaton v. Dixon, supra.* We hold that this is particularly true when the half-siblings have never lived together.

Further, although the trial court ruled that appellant's petition to relocate was moot, it undeniably incorporated the relocation request into his decision to modify custody. Therefore, we reverse and remand so that the trial court may review this case in light of our holding in *Durham v. Durham*, 82 Ark. App. 562, 120 S.W.3d 129 (2003) (citing *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003)), where the supreme court announced a presumption in favor of relocation for custodial parents with primary custody and the factors to be considered by the trial court in relocation requests. In so holding, the supreme court did not indicate that its pronouncement should have only prospective application. Nevertheless, because we have concluded that this case must be reversed and remanded, we direct the trial court to consider appellant's relocation request in light of the presumption in favor of relocation and the new factors listed in *Hollandsworth v. Knyzewski, supra.*

Reversed and remanded.

STROUD, C.J., and CRABTREE, J., agree.