Sonya J. CALHOUN *v.* John Mark CALHOUN

CA 03-356                                    138 S.W.3d 689

Court of Appeals of Arkansas
Divisions I, II and III
Opinion delivered December 10, 2003

*Sharon M. Fortenberry*, for appellant.

*Greg Robinson*, for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Sonya J. Calhoun, appeals from the circuit court's denial of her petition for change of custody in which she urged that the custody of her minor child, who was born March 1, 1995, be transferred from the custodial parent, John Mark Calhoun, to her. Appellant, noting that the court found that she established a material change in circumstances, argues that the court erred when it "failed to find that all those changes had an [e]ffect on the best interest of the child." Because we conclude that the court failed to determine whether the material

change in circumstances affected the best interest of the child, we reverse and remand for further proceedings.

In a decree entered October 3, 1995, the parties were divorced and granted joint custody of their only child. However, in a decree entered May 22, 1997, custody was transferred to appellee. On December 19, 2001, appellant filed a petition for a change of custody, alleging that since the previous change of custody, there had been a significant change in circumstances and that best interest of the child necessitated that custody be transferred to her. Particularly, appellant noted that appellee had divorced his second wife and married his third and that he had been placed on administrative leave by the Pine Bluff Police Department because of inappropriate conduct, news of which was published in the newspapers. She concluded that these "circumstances are not conducive to a stable and happy home life for the minor child."

Hearings on the petition were held on August 27 and November 14, 2002. At the first hearing, appellant presented the testimony of appellee, who at that time was employed as a police officer. He testified that since the 1997 custody hearing, he had divorced his second wife, having separated in October of 1998, and on May 18, 2001, married his third wife. Appellee admitted that in December of 2001 he had been demoted in rank and suspended for thirty days without pay for conduct unbecoming an officer, abuse of position, and dishonesty, because, in November of 2001, while on duty, he had sexual relations with the wife of a deputy he was supervising. Also, at that hearing, the director of children's studies at the Southeast Arkansas Behavioral Health Care System testified that he performed a social evaluation of the parties and that the child wanted to live with appellant.

At the November 14 hearing, appellant further established through appellee's testimony that he had resigned from the police force and that he and his wife were opening a sports grill. According to appellee, he currently did not have any income, having received his last weekly check of $613 on November 1. Appellee testified that when he left his job, he took a lump-sum payout of his retirement in the amount of $25,000, part of which he would use to start the restaurant. Appellee stated that his restaurant would be open for lunch and dinner, would close about 9:00 p.m. during the week, but would remain open until 10:00 to 11:00 p.m. on Friday and Saturday and would close on Sundays.

He further stated that his wife would also run the restaurant and would quit her current job. He estimated that his income would be $400 a week with his wife earning the same amount.[1]

In an order filed December 9, 2002, the court concluded that appellant "showed a material change of circumstances in that [appellee] is currently in his third marriage. She also showed a material change of circumstances with [appellee's] placement on administrative leave and the resulting publicity in the press." The court also noted that appellant established that appellee was currently unemployed, and the court noted that appellee and his "present wife" would open a business in December, using part of his retirement funds to capitalize the business. The court, however, further stated that "although [appellant] met her threshold burden [of showing a material change in circumstances], she did not show that a modification of the custody order of May 22, 1997[,] would be in the best interest of the child. There was no showing that the third marriage, administrative leave[,] or publicity had an adverse impact on the welfare of the child." Also, the court found that appellant "failed to show that the employment status of [appellee] is presently having a direct adverse impact on the parties' child." The court further concluded that the minor

---

[1] The dissent makes three assertions of fact to which we must respond. First, the dissent states that appellant is working in the "adult industry." Any such conduct predated the May 22, 1997, change of custody to appellee, and there was no allegation that appellant engaged in any such conduct after appellee was awarded custody on that date. In fact, the evidence established that appellant had positive changes in her life, with both a stable environment and a stable job. Second, the dissent asserts that "the minor child was also aware of appellant's promiscuous conduct at her home." There is nothing in the record suggesting that appellant was engaged in "promiscuous conduct." The witness quoted by the dissent did not testify that appellant was engaged in "promiscuous conduct," only that based on what he was told by the minor child, he "wonder[ed]" about appellant's private life, and that while appellee had a history of relationships with different women, it sounded "like [the] mother might." However, he further testified that based on what he was told by the minor child, it was "unclear" whether appellant was having a relationship with other men. For her part, appellant testified that both she and one of the three married men mentioned by the minor child had together taken their respective children out to I-30 Speedway, Wild River Country, and twice to dinner; that the second man was in his sixties and was performing maintenance work on her home; and that the third man was a neighbor in his seventies who walks the neighborhood. Third, the dissent suggests that we are disregarding appellee's testimony regarding his work hours. Certainly, the circuit court may consider appellee's testimony on remand and accord it the weight the court deems appropriate. In sum, the dissent appears to labor under the misapprehension that we have remanded for a change of custody. We do not decide that issue here.

child was "functioning as a normal child" in appellee's custody. Appellant appealed from that decision, arguing that while the court found that she established a material change in circumstances, the court erred when it "failed to find that all those changes had an [e]ffect on the best interest of the child."

The Arkansas Supreme Court has stated that "the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary." *Hamilton v. Barrett,* 337 Ark. 460, 466, 989 S.W.2d 520, 523 (1999). Further, the court has stated that "[a] judicial award of custody should not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the chancellor or were not known by the chancellor at the time the original custody order was entered." *Jones. v. Jones,* 326 Ark. 481, 491, 931 S.W.2d 767, 772 (1996). "[C]hild custody is determined by what is in the best interests of the child, and it is not altered absent a material change in circumstances." *Id.* at 487, 931 S.W.2d at 770. "The party seeking modification of the child-custody order has the burden of showing a material change in circumstances." *Id.* at 491, 931 S.W.2d at 772. Further, "[f]or a trial court to change the custody of children, it must first determine that a material change in circumstances has transpired from the time of the divorce decree and, then, determine that a change in custody is in the best interest of the child." *Lewellyn v. Lewellyn,* 351 Ark. 346, 355, 93 S.W.3d 681, 686 (2002).

We conclude appellant is correct in her assertion that the circuit court failed to consider the best interest of the minor child. After the court found that appellant had met her threshold burden of showing a material change in circumstances, the court then stated that appellant did not "show" that a modification would be in the best interest of the child, as she did not "show" that the child had suffered an "adverse impact" by reason of the changed circumstances. In doing so, the court failed to apply the two-step analysis described above and as set forth in *Lewellyn.* After the noncustodial parent has shown a material change in circumstances, rather than requiring the noncustodial parent to then show an adverse impact on the child, the court should weigh these

material changes and consider the best interest of the child. Here, the court found there was a material change in circumstances but then placed an additional burden on appellant, that is, a showing of an "adverse impact" on the child, without simply weighing the child's best interest.

We do not hold, however, that the circuit court should never consider whether there was adverse impact on the child when determining whether a material change in circumstances has occurred. In *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003), the Arkansas Supreme Court addressed the issue of whether the noncustodial parent showed a material change in circumstances. In holding that the noncustodial parent's evidence was insufficient to constitute a material change in circumstances, the court noted that the noncustodial parent "failed to demonstrate any actual harm or adverse effect." Accordingly, in some instances it may be the adverse impact on a child that makes a change in circumstances "material." This is also in keeping with *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). There, the Arkansas Supreme Court held that the custodial parent's relocation no longer constituted a material change in circumstances, and there was a presumption in favor of relocation, with the noncustodial parent having to rebut the presumption. In that case, the court concluded that there was no material change in circumstances, noting that there was no evidence that the relocation would be detrimental to the children.

Moreover, we do not hold that in making a determination of the best interest of a child, the court cannot consider whether the material change in circumstances had an adverse impact on the child. *See Lewellyn, supra* (determining the best interest of a child by considering whether a material change in circumstances had a "negative emotional impact" on the child). We hold that once the noncustodial parent has established a material change in circumstances, the court is to weigh the best interest of the child to determine which parent shall serve as the custodian of the child.

Here, the circuit court found that appellant met the first step of the two-step analysis by concluding that there had been a material change in circumstances. However, rather than weighing the best interest of the child, the court required appellant to

show that the material change in circumstances had an adverse impact on the child. Thus, in view of the circuit court's requirement that the noncustodial parent show an adverse impact on the child, or stated differently, that the child must first suffer harm before the court considered the best interest of the child, we must remand the case to the circuit court for further proceedings. Consequently, we reverse and remand for the court to determine, without requiring appellant to establish an adverse impact on the child, whether a change in custody is in the best interest of the child. *See Walker v. Torres*, 83 Ark. App. 135, 118 S.W.3d 148 (2003)(reversing and remanding where this court found that the circuit court made a misstatement of law in its findings).

Reversed and remanded.

ROBBINS, BIRD, NEAL, and ROAF, JJ., agree.

STROUD, C.J., and PITTMAN, GLADWIN, and GRIFFEN, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. Although the majority professes continued allegiance to the long-settled principle that a change of custody requires proof that a material change of circumstances has occurred since the last custody order, *and* that a change of custody is indeed in the best interest of the child, today it has reversed a trial court decision which found a material change in circumstances, but also found that appellant, a noncustodial parent, failed to prove that a change of custody to her was in the best interest of the child. I do not understand how this result is consistent with the clearly erroneous standard of review. It is not consistent with our practice of deferring to trial court assessments of witness credibility in this sensitive area of Arkansas law. Instead, the majority opinion abandons our established standard of review while paying lip service to it, and amounts to a transparent exercise in redeciding credibility issues in a child–custody case. Moreover, the majority opinion asserts the logically implausible proposition that a party who initiates a change of custody proceeding does not have to prove that a change of custody is in the best interest of the child. Aside from being logically implausible, that proposition violates years of Arkansas case law as well as an Arkansas statute.

The law in this case is well established:

> For a trial court to change the custody of children, it must first determine that a material change in circumstances has transpired

from the time of the divorce decree and, then, determine that a change in custody is in the best interest of the child.

*Lewellyn v. Lewellyn*, 351 Ark. 346, 355, 93 S.W.3d 681, 686 (2002) (citing *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001)). One of our very recent decisions, authored by Judge Neal, addressed the legal requirements for a change of custody:

> Custody should not be changed unless conditions have altered since the decree was rendered or material facts existed at the time of the decree but were unknown to the court, and then only for the welfare of the child. *The court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the child.*

*Middleton v. Middleton*, 83 Ark. App. 7, 113 S.W.3d 625, 629 (2003) (citations omitted) (emphasis provided). The *Middleton* court also emphasized that "the party seeking modification has the burden of showing a material change of circumstances sufficient to warrant a change in custody." *Id.* The court found that a "change of circumstances of the noncustodial parent, including a claim of an improved life because of recent marriage, is not alone sufficient to justify modifying custody." *Id.*

In another case, this court stated:

> The principles governing the modification of custodial orders are well-settled and require no citation. The primary consideration is the best interest and welfare of the child. All other considerations are secondary. Custody awards are not made or changed to punish or reward or gratify the desires of either parent. Although the chancery court retains continuing power over the matter of child custody after the initial award, the original decree is a final adjudication of the proper person to have care and custody of the child. *Before that order can be changed, there must be proof of material facts which were unknown to the court at that time, or proof that the conditions have so materially changed as to warrant modification and that the best interest of the child requires it. The burden of proving such a change is on the party seeking the modification.*

*Word v. Remick*, 75 Ark. App. 390, 393, 58 S.W.3d 422, 424 (2001) (citations omitted) (emphasis provided). Before today's decision, our

court clearly recognized that the party seeking modification of custody bears the burden of proof to show a material change of circumstances *and that a custody change is in the best interest of the child.*

The *Word* court also stated that upon appellate review we do not disturb the trial court's findings unless clearly against the preponderance of the evidence. *Id.* at 394, 58 S.W.3d at 424. The question of the preponderance of the evidence turns largely upon the credibility of the witnesses and we therefore defer to the trial court's superior position to evaluate witness credibility. *Id.* In fact, in cases involving child custody, we particularly rely on the trial court's "powers of perception" to evaluate the witnesses. *Id.*, 58 S.W.3d at 424-25. From this, we should recognize that a trial court's findings concerning material changes as well as what is in the best interest of the child are questions of fact; accordingly, we must apply the clearly-erroneous standard of review.

Again, in *Eaton v. Dixon*, 69 Ark. App. 9, 9 S.W.3d 535 (2000), we acknowledged that

> [a] judicial award of child custody should not be modified *unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the child, or when there is a showing of facts affecting the best interest of the child* that were either not presented to the chancellor or were not known by the chancellor at the time the original custody order was entered.

69 Ark. App. at 11-12, 9 S.W.3d at 537 (citations omitted) (emphasis provided). In other words, the party seeking change of custody must show proof that there are changed conditions and that those changed conditions warrant a custody modification in the best interest of the child. The principle that the proponent of a change of custody carries the burden of proof on both the question of whether material changes exist and whether a change of custody is in the best interest of the child was also reflected in *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996). In that case, our supreme court stated:

> A judicial award of custody should not be modified *unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the child, or when there is a showing of facts affecting the best interest of the child* that were either not presented to the chancellor at the time of the original custody order or were not

known by the chancellor at the time the original custody order was
entered.

326 Ark. at 491, 931 S.W.2d at 772 (citations omitted) (emphasis
provided).

One simply cannot read this body of law and correctly
conclude that the party seeking custody modification does not
have the burden to prove that a change of custody is in the best
interest of the child. *See also Mason v. Mason*, 82 Ark. App. 133, 111
S.W.3d 855 (2003) (employing similar language concerning the
burden of proof).

This long-settled body of case law is being distorted and
disturbed by the decision in this case. The trial court found a
change in circumstances, but refused to change custody because
appellant failed to prove that a change of custody would be in the
best interest of the child. Here, both parties presented obvious
faults. Appellant's private life involved factors, such as working in
the adult industry, that put into question her suitability to obtain
physical custody over her minor son. In fact, one of the witnesses,
William P. Wilcox, director of children's studies at Southeast
Arkansas Behavioral Health Care System, conducted a psychologi-
cal evaluation of the parties. Notably, the majority opinion omits
the pertinent statements that were available to the trial court
before it made the determinations now subject to this appeal.
Wilcox testified that his studies "didn't find what we usually look
for, which is a compelling reason to recommend one parent over
the other." According to Wilcox, the minor child was also aware
of appellant's promiscuous conduct at her home. Wilcox clearly
stated that the minor "did mention these men in the interview.
But he said nothing derogatory about them." Specifically, Wilcox
testified as follows:

> . . . But there again, you see, there's that other side when [the minor]
> mentioned like several, several men that come to visit mother and
> you know, their wives don't come. He said this very innocently, you
> know, kids are not aware of what it means to[,] you know, be
> unfaithful or questions of adultery and that sort of thing. . . .

Based on this testimony, we should find that the trial court
was not clearly erroneous when it decided not to change custody.
Arkansas law has long been adamantly clear that a parent's illicit

sexual conduct in the presence of children is against the best interest of the children. We have never condoned a parent's promiscuous conduct or lifestyle when such conduct has been in the presence of the children. *Ketron v. Ketron (Aguirre)*, 15 Ark. App. 325, 692 S.W.2d 261 (1985) (allowing mother custody over the child, but ordering her to discontinue living arrangements with a man who was married but separated from his wife); *see also Scherm v. Scherm*, 12 Ark. App. 207, 671 S.W.2d 224 (1984) (terminating custody because of promiscuous conduct). In fact, the supreme court has held that we outright presume that illicit sexual conduct on the part of a custodial parent is detrimental to the children. *Digby v. Digby*, 263 Ark. 813, 567 S.W.2d 290 (1978).

All of this merely goes to say that the trial court could properly consider appellant's current lifestyle and conclude that it was not in the best interest of the child to change custody to her, or, similarly, conclude that appellant had failed to show how a change of custody would be in the best interest of the child. This is particularly notable in light of the fact that Wilcox also quite clearly stated that neither parent offered a compelling reason to recommend one over the other. After all, appellee's life also was checkered by misbehavior and controversy. Appellee is now in his third marriage and demonstrated a history of unfaithfulness. He lost his police job because of a sexual affair he had with a colleague's wife. At the time of the hearing, he was in the process of establishing a restaurant business, with the typical uncertainties associated with a new venture.

However, appellant failed to show how appellee's changed circumstances affected the minor son so as to make a custody change in the child's best interest. Appellant also failed to show why a change of custody from one admittedly not so good situation to yet another not so good situation would be in the best interest of the child. Both parents appear inclined to promiscuous behavior. Testimony established that the minor was actually aware of appellant's continued change of male visitors. Appellee had repeatedly remarried and had extramarital affairs.

It further remains unclear why a change in appellant's occupation ought to lead to a change of custody. Appellee testified —and this is something else the majority opinion does not mention—that he intended to work at the restaurant only when his wife is at home with the child and that his wife, alternately, intends to work at the restaurant only when he stays home.

Appellee also testified that, in part, he went into the restaurant venture to have more time for his family. For us to now disregard those statements is tantamount to holding that appellee's statements somehow deserve less credibility than the trial court afforded them. Such a holding flies into the face of our well-established standard of review and practice of deferring to the trial court's superior position to assess witness credibility in child custody cases.

The trial court explained its decision in terms of appellant's failure to show an "adverse impact" on the child from appellee's remarriages, extramarital relationships, and new business venture (the restaurant) because appellant argued that those factors posed an "adverse impact" on the child. In each instance, the trial court merely addressed appellant's "adverse impact" contention; it did not impose a different standard from the "best interest of the child." Indeed, the trial court found that appellant failed to prove that a change of custody is in the best interest of the child despite agreeing with appellant that appellee's conduct amounted to a change of circumstances.

The fundamental flaw in the majority decision arises from its casual affirmation of an utterly indefensible proposition; namely, that the party seeking a change of custody does not face the burden of proving, by a preponderance of the evidence, that a change in custody is in the best interest of the child. The majority admits that it is not reversible error for the trial court to "consider whether there was adverse impact on the child when determining whether a material change in circumstances has occurred." The majority also does not prohibit a trial court, in determining the best interest of the child, from considering "whether the material change in circumstances had an adverse impact on the child." But the majority then asserts that "once the noncustodial parent has established a material change in circumstances, the court is to weigh the best interest of the child to determine which parent shall serve as the custodian of the child." No matter how the majority may assert otherwise, this is a new development in child custody law. It plainly does not square with the supreme court's holdings in *Llewelyn v. Llewelyn, supra,* and *Jones v. Jones, supra.*

The majority's new standard also cannot be reconciled with the judicial fact-finding process in child-custody litigation. Whether a change in custody is in the best interest of a child is a question of *fact,* not a matter of law. As such, the best-interest

criterion is susceptible of, and must be attended by, some proof. Yet, the majority today holds that the noncustodial parent, as the party seeking a change in custody, has no duty to produce proof on the best-interest criterion. Moreover, the majority holds that a trial court commits reversible error if it denies the noncustodial parent's petition to change custody because the noncustodial parent failed to carry its burden of proof on the best-interest issue. No other reasonable inference can be drawn from today's decision, especially in view of the language in the majority opinion stating that the trial court "is to weigh the best interest of the child to determine which parent shall serve as the custodian of the child."

The majority is clearly mistaken. Arkansas Code Annotated section 16-40-101 (Repl. 1999) is unmistakably plain:

(a) The party holding the affirmative of an issue *must produce the evidence to prove it.*

(b) The burden of proof in the whole action lies on the party who would be defeated if no evidence would be given on either side. (Emphasis added.)

This statute applies just as much to child custody cases as to any other litigation. Section 16-40-101(a) therefore disproves the position asserted in the majority opinion that the noncustodial parent is somehow absolved from the burden of producing evidence to prove that the best interest of the child is served by changing custody to that person. Any other interpretation mocks the plain wording of the statute, not to mention years of Arkansas case law.

Moreover, no other interpretation makes sense when one undertakes appellate review. If the best-interest criterion is a separate factor to be decided by trial courts in child-custody litigation, and if trial court decisions in such matters are subject to appellate review upon a clearly erroneous standard, then appellate judges must base our review on the evidence presented to and weighed by the trial court. If trial courts may not rule against noncustodial parents who fail to produce evidence going to the best-interest-of-the-child factor, upon what basis is the best interest to be determined and trial court decisions on that issue reviewed? The majority opinion appears oblivious, if not insensitive, to the fundamental requirement that noncustodial parents are obliged to prove "best interest" as well as "changed circumstances" by a preponderance of the evidence, and that proof of

changed circumstances does not obviate the need for or lower the burden of proof regarding best interest of the child.

This decision highlights the important work done by trial judges in weighing conflicting testimony and assessing the credibility of the competing parties in child custody litigation. Our appellate decisions have frequently declared that in no other area of the law do we defer as much to the superior position of trial judges to evaluate witness demeanor and credibility. In the present case, the trial judge has the benefit of several interactions with the disputing parents. Appellant was the custodial parent initially when the parties divorced. Custody was later changed to appellee after the trial court decided that changed circumstances and the best interest of the child justified a change in the custodial arrangement. Now the trial judge, having the benefit of that experience *plus* his firsthand assessments of the parties in this latest change of custody proceeding, is being reversed by judges who have never seen the parties or assessed their credibility (except from reading the cold record). What is worse, the appellate judges now compel the trial judge to disregard Ark. Code Ann. § 16-40-101. Given the facts of this case and our clear jurisprudence on change of custody, I would hold that the trial court was not clearly erroneous when it found a material change in circumstances, but found that appellant failed to discharge her burden of proving that a change of custody works in the best interest of the child. Even if my colleagues in the majority disagree with the decision reached by the trial judge, that disagreement does not excuse turning the principles of appellate review on their head and disregarding the enacted judgment of the Arkansas General Assembly concerning the burden of proof.

I am authorized to state that STROUD, C.J., PITTMAN and GLADWIN, JJ., join in this dissenting opinion.