Christopher Earl JOWERS  *v.*  Jamie Sue JOWERS

CA 05–220                                          214 S.W.3d 294

Court of Appeals of Arkansas
Opinion delivered September 28, 2005

*Ray Bunch*, for appellant.

*The Newman Law Firm*, by: *Sue Ann v.* Newman, for appellee.

DAVID M. GLOVER, Judge. Appellant, Christopher Jowers, and appellee, Jamie Jowers, were divorced on August 25, 2004. As part of their settlement agreement, the parties agreed that appellant would have custody of their minor child, a son, whose date of birth was January 14, 2001. They also agreed upon a visitation schedule for appellee, which allowed her to keep the child during the day, Monday through Friday. Finally, they agreed upon the amount of monthly child support that appellee would pay, which took into account the fact that appellee was providing daycare for the child. The agreement was approved by the court and incorporated into the divorce decree. On September 23, 2004, approximately one month after the divorce decree was entered, appellant filed a change of address notice with the circuit-court clerk. On September 26 or 27, 2004, appellant took the child and moved to Brownsville, Texas, but he did not notify appellee of the move until after he had relocated. On September 29, 2004, appellee filed a petition for contempt and for modification of custody. Appellant counterclaimed for modification

of visitation and support. Following a hearing, the trial court found appellant in contempt and ordered him to pay $1000 in attorney's fees. In addition, the trial court found that there had been a material change of circumstances and therefore changed custody of the child from appellant to appellee; the court also modified visitation, and set support at $70 per week.

Appellant raises two points of appeal, challenging the trial court's decision with respect to contempt and with respect to the change of custody. We affirm the trial court's finding of contempt. However, we conclude that the trial court erred in deciding the issue of custody without also addressing the relocation factors set forth in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). Therefore, we affirm in part and reverse and remand in part for the trial court to determine the custody issue in conjunction with the *Hollandsworth* relocation factors.

At the hearing in this case, appellee testified that she and appellant divorced on August 25, 2004, and that they had one son. She stated that according to her custody and visitation agreement with appellant, she was to have visitation with her son Monday through Friday of each week from 6 a.m. until 4:30 p.m., plus every other weekend and alternate holidays. She explained that she would not have allowed appellant to have custody of the child if she were not going to be able to see him virtually every day. She stated that the high level of visitation for her was at the heart of their agreement.

Appellee testified that appellant had lived in Arkansas for about two years before he moved to Texas; that he did not notify her that he was moving to Texas; that she found out he had moved when he did not show up with the child one Monday morning; that she called his place of employment only to find out that he no longer worked there; and that she went to his house and all of his "stuff" was gone. She stated that as a result of the move, she had not been able to carry on her daily visitation with the child and that it had also been difficult to speak with him on the telephone. She stated that it is about a twelve-hour drive between her house and appellant's house in Texas.

Appellee acknowledged that appellant called her on Thursday of the week she learned that he had moved and that she was able to meet him in Clinton, Oklahoma, to pick up the child and keep him for a week. She also testified that since that time, she has had the child every other weekend and that she and appellant meet in Oklahoma to make the exchange.

Appellee explained that she is a trim carpenter and that she now works from 8 a.m. until 4 p.m. She stated that prior to getting the job as a trim carpenter, she was basically providing daycare for her son. She said that she would not be able to do that now because of her job. She explained that her mother has a daycare in her home; that she lives with her mother; and that the child would stay with her mom if she were given custody.

Appellee testified that appellant was working late hours with his farm job in Texas and that he did not spend very much time with their son. She stated that if she had custody, she would only be gone from 8 a.m. to 4 p.m.

Appellant testified that he has lived in Brownsville, Texas, since the first of October with his parents and son. He explained that he moved to Texas because "we were getting slow at my job," Northwest Sheetmetal. He acknowledged that he told his employer a month in advance that he had two or three job openings in Texas. He said that he works a lot of hours and that he makes more money than he formerly did. He explained that he made about $250 or $280 a week at the sheetmetal job in Arkansas and that he made anywhere between $300 and $500 in Texas. He testified that he did not realize there was anything to stop him from moving to Texas. He said that all of his family were in Texas and that he "just wanted basically to see what was better for my son." He said that he did not know that he should have filed a petition asking the court to address the issue of relocation. He explained that he notified the court in writing of his change of address on September 23, 2004.

Appellant described the manner in which he and appellee had handled visitation since his move to Texas. He stated that appellee had visited with the child five different weekends and that they meet halfway for the exchange.

Appellant explained that his son stays at a daycare while he works and that since October 17, the child has been in day care from 8 a.m. until 5 p.m. He said that there "might be a day I don't see him because of working late." He explained that his hours are usually from 8:00 or 9:00 in the morning until 10:00 or 11:00 at night; that the hours change with the seasons; and that his normal work day would be from 8:00 a.m. until 8:00 p.m. He explained that the child's grandparents pick him up and keep him until appellant gets home.

Appellant testified that he did not move to Texas to prohibit visitation between appellee and their child; that he moved to get a

better job and to make more money; that his family was "down there"; that after the divorce, the only family he had in Arkansas was his grandpa; and that he had lived in Texas most of his life. He stated that "it was not [his] intention all along" to get custody of the child and move to Texas. He acknowledged that the divorce decree was file-marked August 25, 2004; that the change of address form he filed with the court was file-marked September 23, 2004; that he moved to Texas on September 26 or 27, 2004; and that he informed his employer "a month ahead of time" that it "wasn't for sure" but "it was possible" he would be moving to Texas. He also acknowledged that child custody and visitation were at the heart of his agreement with appellee. He explained that Brownsville, Texas, is a little over 650 miles from where appellee lives, and he testified, as did appellant, that the drive is about twelve hours.

Appellant stated that when he works until 11 p.m., either his aunt or grandparents pick up the child and take him to their house and that if his mom is not working that day, she picks up the child and takes him to her house.

Upon examination by the trial court, appellant testified that when he worked in Arkansas, his hours were from 7:00 or 7:30 a.m. until 4:00 p.m., Monday thru Friday; that he was not fired from that job; that he gave a month's notice before moving to Texas; that in Texas the previous week he had worked from 8:00 or 9:00 in the morning until 10:00 or 12:00 at night; that his work schedule fluctuates; and that he could work those hours seven days a week.

Appellant further explained that during harvest, which lasts a month and was going on at the time of the hearing, he works a lot of hours, but that before harvest he usually works an eight- or nine-hour day. He stated that planting season lasts about two months, depending upon the amount of acreage. He explained that to get $500 a week, he might work ten to twelve hours a day in a four-day week; and that a $300 week would involve eight to nine hours per day.

The court then ruled from the bench, expressing the belief that appellant "duped" appellee into going along with the custody plan, when he had no intention of ever complying with that agreement. The court found appellant to be in "willful contempt of court." The court noted that it had not been asked to set aside the decree on the basis of fraud,

although it looks to me like that is exactly what happened. He made a deal he never intended to keep. He induced Mrs. Jowers to enter into this agreement with him on the promise of letting her see this child everyday. That was a lie at the time. I firmly believe from his testimony it was a lie. He never intended to go along with it.

The court also noted that appellant was now "spending maybe as many as ten hours a day, seven days a week away from the child during the busy season and at best spends more time away from the child than Mrs. Jowers would have to spend away from the child were the child permitted to live here." Finally, the court ruled:

> Basically, I guess what I am saying is that I do find a substantial change of circumstances, and I am changing custody of this child. Mrs. Jowers is going to have custody. Mr. Jowers will have visitation of six weeks in the summer, one week at Christmas, and I am going to give him one week every month that he can come to Arkansas and pick the child up and bring the child back. He can come up on the second Saturday and bring the child back the Sunday, a week from that Saturday of each month, but that will not supersede holidays. Holidays take precedence.

> You are in contempt of court, Mr. Jowers. You are lucky you are not going to jail. You can pay $1,000 attorney's fees. That is your sanction, and frankly I am not finding Mrs. Jowers in contempt for not paying the child support because she has had to spend all the money to get to see her child since he uprooted and took the child to Texas.

The Order of Modification provided in pertinent part:

> 3. That the Plaintiff is found to have willfully violated the previous Orders of this Court in not allowing the Defendant her Court ordered visitation. The Plaintiff is therefore found in Contempt of Court.

> 4. That the Court finds that there has been a material change in circumstances that warrants a change of custody. That the custody of the parties' minor child, Christopher James Jowers, born, January 14, 2001 is hereby changed to the Defendant, Jamie Sue Jowers, subject to the reasonable visitation rights of the Plaintiff. The Court further finds that it is in the best interest of Christopher James Jowers, that the Defendant be granted sole care, custody and control over him.

In cases involving child custody, we review the case *de novo*, but we will not reverse a trial judge's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Aswell v. Aswell*, 88 Ark. App. 115, 195 S.W.3d 365 (2004). Specific to an appeal of a trial court's finding of civil contempt, we will not reverse that finding unless it is against the preponderance of the evidence. *Id*. Although there is evidence to support it, a finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id*.

For his first point of appeal, appellant contends that the trial court erred in finding him in contempt of court. We disagree.

Following the hearing, the trial court found that appellant had willfully violated the court's previous orders by not allowing appellee her court-ordered visitation, and therefore found that appellant was in contempt of court. Disobedience of any valid order of a court having jurisdiction to enter it may constitute contempt, punishment for which is an inherent power of the court. *Aswell v. Aswell, supra; Gatlin v. Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991).

Here, the trial court stated its clear belief that appellant "made a deal he never intended to keep," that he "induced Mrs. Jowers to enter into this agreement with him on the promise of letting her see this child everyday," that "it was a lie at the time," and that he "never intended to go along with it." We find no clear error in the trial court's findings on this point that appellant's conduct intentionally frustrated the ordered visitation, thereby constituting contempt.

For his remaining point of appeal, appellant contends that the trial court erred in ordering a change of custody. We agree.

The standard of appellate review governing custody modifications is well settled. *Dansby v. Dansby*, 87 Ark. App. 156, 189 S.W.3d 473 (2004). In child-custody cases, the primary consideration is the welfare and best interests of the child involved; all other considerations are secondary. *Id*. Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the child. *Id*. In cases involving child custody and related matters, we review the case *de novo*, but we will not reverse a trial judge's

findings in this regard unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.* Because the question of whether the trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Id.*

In seeking a change of custody, appellee had the burden of proof. The party seeking modification of the child-custody order has the burden of showing a material change in circumstances. *Calhoun v. Calhoun,* 84 Ark. App. 158, 138 S.W.3d 689 (2003). In order for a trial court to change the custody of children, it must first determine that a material change in circumstances has transpired from the time of the divorce decree and, then, determine that a change in custody is in the best interest of the child. *Id.*

Moreover, in *Hollandsworth v. Knyzewski, supra,* our supreme court held that relocation alone is not a material change in circumstances and announced that there is a presumption in favor of relocation for custodial parents having primary custody. Our supreme court made it clear in *Hollandsworth* that the custodial parent no longer has the responsibility to prove a real advantage to herself or himself and to the children in relocating. Rather, the noncustodial parent has the burden to rebut the relocation presumption. The *Hollandsworth* court explained that the polestar in making a relocation determination is the best interests of the child, and that the court should take into consideration the following factors: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

Here, the *Hollandsworth* factors were not addressed by the trial court, presumably because of the manner in which this case arose. That is, appellant had already moved to Texas, and the case was heard on appellee's motion to change custody and to find

appellant in contempt of court, and on appellant's counter-motion for modification of visitation and support. However, in light of the *Hollandsworth* presumption in favor of relocation and its holding that relocation alone is not a material change of circumstances, we find that the trial court erred in deciding the custody issue without also addressing the factors set forth in *Hollandsworth*. We therefore reverse and remand the custody portion of the trial court's decision in order for the court to decide the custody issue in conjunction with the *Hollandsworth* relocation factors.

Affirmed in part; reversed and remanded in part.

PITTMAN, C.J., and GLADWIN, J., agree.