Marandi Shirley BERNAL *v.* James SHIRLEY

CA 06-144                                    239 S.W.3d 11

Court of Appeals of Arkansas
Opinion delivered September 13, 2006

*Darrel Blount*, for appellant.

No response.

OLLY NEAL, Judge. Appellant Marandi Shirley Bernal appeals from an order of the Garland County Circuit Court that found her in contempt of the court's last custody order and awarded appellee James Shirley custody of the parties' three children. On appeal, appellant argues that: (1) the trial court erred in changing custody of the children, as it did not find that there had been a material change of circumstances since the last order affecting custody; (2) the trial court erred in changing custody of the children, as it did not consider the best interest of the children; (3) the trial court erred when it used the change of custody to punish appellant for being in contempt of the trial court's order. We reverse and remand.

The facts of this case are as follows. The parties were divorced on March 31, 1996. Three children were born during the marriage, a daughter Cortnie, age ten, and twin sons, Stephan and Shaun, age nine. Appellant was awarded custody of the children subject to appellee's visitation. Both parties have subsequently remarried and appellant has relocated to Louisiana.

Since their divorce, the parties have filed several contempt motions and petitions to change custody. Prior to the current matter, the last order affecting custody was entered on June 29, 2004. That order found appellant to be in "willful and wanton" contempt of the court's previous order. The order provided that the contempt could be purged by allowing appellee to exercise visitation from May 28, 2004, until June 9, 2004. The order further provided that: (a) appellee was to have telephone visitation each Tuesday and Thursday between 6:30 and 7:00 p.m.; (b) for subsequent visitations with appellee, the children were to be exchanged at a gas station in Hope and, during the exchange, the parties were to have no contact; (c) appellant was to provide appellee with a copy of each child's school calendar; and (d) each party was to share information about the children's medical and scholastic activities.

On April 1, 2005, appellee filed a petition for contempt and change of custody. In the petition, appellee alleged that: 1) appellant had moved from her last known residence in Louisiana and had failed to inform appellee of her new address; 2) appellant's phone had been disconnected and he was unable to exercise his telephone visitation; 3) he had been denied spring-break visitation, Easter visitation, and visitation on his birthday; and 4) appellant had failed to keep him abreast of the children's scholastic activities and medical needs. Appellee asserted that due to appellant's contempt, he should be awarded custody of the parties' children. Appellee filed an amended petition for contempt and change of custody on June 3, 2005, alleging that there had been a material change of circumstances and that it would be in the best interest of the children if he were awarded custody.

On June 24, 2005, appellee filed a petition for emergency ex-parte relief. He alleged that he had been denied summer visitation. Attached to the petition was an affidavit from appellee, in which appellee stated that the children's last day of school was May 20, 2005, that his summer visitation was to begin on May 27, 2005, and that appellant refused to meet him on May 27. An emergency ex-parte order, ordering appellant to relinquish the children to appellee's custody, was entered on June 27, 2005. Appellant was served with the order on July 5, 2005. On July 7, 2005, appellant filed a motion to set aside the ex-parte order. That same day an order was entered setting the ex-parte order aside.

A hearing on appellee's petition for contempt and change of custody was held on August 11, 2005. At the hearing, Deputy Harlan Smith of the Garland County Sheriff's Department testified that he assisted in serving appellant with the ex-parte order. He said that the order was served on appellant at the sheriff's office. He testified that appellant became upset when she learned she was being served with the order. Deputy Smith said that appellant used profanity and had to be escorted out of the sheriff's office. He testified that the parties' boys did not want to comply with the order and that the officers had to physically carry one of the boys to appellee's car and force him inside.

Appellee testified that, since the last hearing, appellant had changed residences in Louisiana and had failed to give him her new address and phone number. He said that, as a result, he was unable to exercise his telephone visitation. He later testified that he received appellant's phone number on April 26. Appellee also testified that, since the last order, he had missed seventy days of

visitation with his children. He said that he had been denied spring-break visitation, Easter visitation, and visitation on his birthday. Appellee conceded that some of the days that he missed were the result of his not being able to pick the children up due to work commitments.

Appellee testified that he and appellant do not get along. He said that appellant refuses to discuss why the boys fail to bring their glasses and hearing aids when they visit him. He also said that there was a physical altercation between the parties and their respective spouses during an exchange on October 31, 2004. Appellee later testified that appellant never brings the children to Hope for the exchange. He said that appellant's mother usually brings the children to Hope. He admitted that on May 27, appellant's mother brought the children to Hope. He also admitted, "It could have been misleading to the court when I stated in my affidavit that [appellant] didn't bring the kids for visitation when in fact her mother did bring them." He said that, during the May 27 exchange, one of the boys refused to go with him.

Appellee thought that it would be in the children's best interest if he were awarded custody. He said that, in addition to the child he has with his wife, his wife has three children that live with them. Appellee admitted that he has trouble disciplining the boys and that he sometimes has his brother discipline the boys. Appellee denied making derogatory remarks about appellant in front of the children. He accused appellant of making derogatory remarks about his wife in front of the children.

Appellee testified that, in February 2005, he sent a letter to appellant expressing concern about a date Cortnie was to have. However, he denied writing a letter in which he stated that, if the boys did not want to visit him, then he would no longer make them visit. During his testimony, appellee stated that, since giving the children's school copies of the court orders, he does not have trouble getting reports from their school.

Cindy Shirley, appellee's wife, testified that she kept a calendar of the children's visitation. She said that, since April 2004, Cortnie had only visited ninety-one days, Shaun had visited forty-eight days, and Stephan had visited forty-two days. Mrs. Shirley believed that the children would be better off in her husband's custody. She testified that they live in a mobile home that consist of two single-wides and that the home has four

bedrooms and one bathroom. She said that she was prepared to do whatever it took to make sure the children had a good relationship with appellant.

Mary Cooper, appellant's grandmother, testified that, on July 5, she took the children to meet appellee. She said that, when Cortnie expressed a desire to stay with her, appellee started yelling and cursing at Cortnie. She said that appellee accused her of brainwashing the children and that appellee left without the children. She said that appellant has encouraged the children to visit appellee; however, despite appellant's encouragement, the boys refuse to visit appellee. Ms. Cooper testified that the children loved both parents, but wanted to live with appellant.

Mary Goin, appellant's mother, testified that she had brought the children to Hope every time appellee was to have visitation. She said that, almost every time, the boys refused to go with appellee. Ms. Goin testified that she did not take the children on October 31, because appellee had insisted that appellant bring the children. During her testimony, Ms. Goin explained that one time, prior to his scheduled visitation, appellee told Stephan he could not come because he was grounded for refusing to talk to appellee during his telephone visitation. She said that, when she took the children to Hope, appellee sent Stephan back to her car. Ms. Goin stated that appellant had never discouraged the boys from visiting appellee. She also said that appellee has always had her address and phone number and could have reached appellant through her. She testified that she had mailed a letter to appellee that contained appellant's new address.

Appellant testified that, on the day she was served with the ex-parte order, she had just learned that her father and three other family members had been killed in an accident. She said that she had called appellee and asked to pick up Cortnie. She said that she thought she was at the sheriff's office to pick up Cortnie. Appellant testified that, in the last order, she was ordered to take the children to Hope so appellee could exercise his visitation. She said that, since then, except when appellee was unable to pick the children up, the children had been taken to Hope each time appellee had a scheduled visitation. Appellant said that she had encouraged the children to visit appellee. She testified that if she had known that the order meant that she was to take the children to Hope and force them into appellee's car, she would have done so.

Appellant testified that, in June, she received a letter from appellee saying that, since the children did not want to visit, he was

no longer going to pick them up. Appellant denied refusing to give appellee her new address and phone number. She said that appellee had her mother's address and phone number and that he had called her several times. She said that when she got a phone, she gave appellee her phone number. Appellant explained that, when she moved, the children's spring break changed, so appellee's spring-break visitation was cut short. She pointed out that appellee's birthday was in June, and that his petition was filed in April 2005. She said that appellee did have his birthday visitation in June 2004. She also said that appellee was allowed his Easter visitation. Appellant maintained that she had made every effort to comply with the court's order. She accused appellee's wife of making derogatory remarks about her.

On September 1, 2005, the trial court entered an order finding appellant in "wanton and willful contempt" of the court's orders. The court found that appellant had: (1) refused to allow appellee to exercise his visitation; (2) failed to keep appellee abreast of the children's scholastic activities, growth, and development; and (3) failed to provide appellee with her address and phone number. The trial court sentenced appellant to thirty days in the Garland County Detention Center with twenty days suspended.

In the September 1 order, the trial court also granted appellee's petition for change of custody. The order provided that after thirty days, appellant would have visitation every other weekend and that the parties would continue to exchange the children at the Hempstead County Sheriff's Department. The order also provided that appellant would have telephone visitation every Tuesday and Thursday. From that order, appellant now brings this appeal.

In child-custody cases, the primary consideration is the welfare and best interest of the child involved. *Dansby v. Dansby*, 87 Ark. App. 156, 189 S.W.3d 473 (2004). Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the child. *Id.* In cases involving child custody and related matters, we review the case de novo, but we will not reverse a trial judge's findings in this regard unless they are clearly erroneous. *Jowers v. Jowers*, 92 Ark. App. 374, 214 S.W.3d 294 (2005). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.* Because the question of whether

the trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Id.*

Custody should not be changed unless conditions have altered since the decree was rendered or material facts existed at the time of the decree but were unknown to the court, and then only for the welfare of the child. *Middleton v. Middleton*, 83 Ark. App. 7, 113 S.W.3d 625 (2003). The court must first determine that a material change in circumstances has occurred since the last order of custody, if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the child. *Id.* The party seeking the modification has the burden of showing a material change of circumstances sufficient to warrant a change in custody. *Id.*

Appellant argues that the trial court failed to find that a material change of circumstances had occurred and that the trial court also failed to consider the best interest of the children. We agree. A review of the trial court's order reveals that the trial court never made a finding that a material change of circumstances had occurred and based upon the record before us, we are unable to find that a material change of circumstances had occurred. It was undisputed at the hearing that the children were well-cared for and doing well in school. There was no evidence of the children's preference. Furthermore, the living conditions with appellee would be significantly less advantageous — nine people sharing four bedrooms and one bath in two single-wide mobile homes pushed together. Accordingly, we hold that the decision of the trial court to award custody of the parties' children to appellee was clearly erroneous, and we reverse and remand.

Appellant also argues that the trial court erred when it used the change of custody of the children to punish appellant for contempt of the court's orders. A violation of the court's previous directives does not compel a change in custody. *Carver v. May*, 81 Ark. App. 292, 101 S.W.3d 256 (2003). The fact that a party seeking to retain custody of a child has violated court orders is a factor to be taken into consideration, but it is not so conclusive as to require the court to act contrary to the best interest of the child. *Id.* To hold otherwise would permit the desire to punish a parent to override the paramount consideration in all custody cases, *i.e.*,

the welfare of the child involved. *Id*. Instead, to ensure compliance with its orders, a trial court has at its disposal the power of contempt, which should be used prior to the more drastic measure of changing custody. *Powell v. Marshall*, 88 Ark. App. 257, 197 S.W.3d 24 (2004).

Without a finding of a material change of circumstances and a discussion of what was in the best interest of the children, the trial court could not use the mere violation of its previous orders as the sole justification for changing custody of the children. We are unable to say that appellant's contemptuous behavior alone was a material change of circumstance and, accordingly, we reverse and remand the trial court's decision.

Reversed and remanded.

HART and VAUGHT, JJ., agree.