2011 Ark. App. 494

**Brooke HOBBY (Baugh), Appellant**

v.

**Tommy WALKER, Appellee.**

**No. CA 11–131.**

Court of Appeals of Arkansas.

Aug. 31, 2011.

Rebecca K. Brown, Benton, for appellant.

Meridith Miller Wineland, Benton, for appellee.

DOUG MARTIN, Judge.

Appellant Brooke Hobby appeals from the circuit court's order denying her motion for a change of custody. Because we conclude that the circuit court did not clearly err in finding that Brooke failed to demonstrate the existence of a material change in circumstances, we affirm.

Brooke and appellee Tommy Walker are the parents of a daughter, G.W., although Brooke and Tommy were never married. G.W. was fourteen years old at the time of the hearing on Brooke's motion. According to Brooke, the couple shared joint custody of G.W. until 2008, when the Saline County Circuit Court entered an agreed order under which the parties agreed that Tommy should have care and custody of G.W., subject to reasonable visitation by Brooke. Brooke was also ordered to pay $75 per week in child support.

On September 11, 2009, Brooke filed a motion for change of custody, alleging that G.W. desired to live with her mother and that a significant change in circumstances had occurred. Tommy responded to Brooke's motion on October 7, 2009, denying both that there had been a material change in circumstances and that G.W. had decided that she wanted to live with her mother.[1]

---

1. Tommy subsequently filed a motion for contempt in June 2010, alleging that Brooke had

The circuit court held a hearing on the custody-change motion on July 21, 2010. At the hearing, Brooke testified that she originally sought a change of custody a few years previously because G.W. asked her to but dropped the motion because G.W. changed her mind. Brooke filed the current motion in response to what she perceived as Tommy's refusal to cooperate on visitation issues. For example, Brooke explained that her husband had planned and paid for a vacation in Florida with Brooke and her mother and younger brother; because the custody order did not specify which parent was to start the first two weeks of summer vacation, Brooke asked Tommy if she could have G.W. for those two weeks. Tommy refused, saying there was a function he had to go to at his church that conflicted with Brooke's plans. Brooke complained that Tommy also refused to swap weekend visitations so that G.W. could attend Brooke's aunt's wedding or go on a youth hunting trip. Brooke stated that Tommy would either not give a reason for refusing to swap, say that "they [had] something with church," or claim to have something already planned.

Brooke also pointed out that the rules for G.W. at Tommy's house are different from the rules at her home. For example, at her father's home, G.W. is not allowed to listen to music unless it is Christian music that their church listens to, and she cannot wear jeans, skirts, or shorts. Brooke would allow G.W. to wear shorts and jeans, and when she discussed the clothing issue with Tommy, Tommy told Brooke that G.W. knows the rules and will get in trouble if she does not obey them.

Brooke recounted that, when her mother gave G.W. an iPod for Christmas, G.W. put some music on it at her mother's house; the music consisted of artists such as Miley Cyrus, Tim McGraw, and Justin Timberlake. Soon thereafter, Tommy called Brooke and asked her why she let G.W. "do this stuff." As punishment for listening to this music, Tommy whipped G.W. with a belt, grounded her, and took her bedroom door off its hinges, even though G.W. never listened to the iPod at his house.

G.W. did not "run wild" at her home, Brooke said, and even though her rules for G.W. were different than Tommy's, Brooke did not allow her to do things that were inappropriate for a fourteen-year-old girl. Brooke said she did not understand why G.W. should get in trouble for "being a teenager who listens to music and wear[s] teenager clothes that are appropriate."

In addition to the different rules and discipline policies, Brooke also expressed concern with G.W.'s schooling, noting that the school G.W. was attending used a program very similar to a home-schooling program. Brooke said she was worried that G.W. would not be able to get a scholarship to a good college that she wanted to attend. On cross-examination, however, Brooke acknowledged that G.W. had been attending the same school since the original custody agreement.

Tommy also testified at the hearing, stating that he did not recall the conversation in which Brooke asked to swap visitation so she could take G.W. to her aunt's wedding; he also said that he did not think the youth hunt was appropriate because he did not think his daughter needed to be "off with a man in the woods by themselves."[2] Tommy further stated that there were "a lot of changes going on in

violated the circuit court's orders regarding visitation. At the conclusion of the circuit court's custody hearing, however, Tommy withdrew the motion.

2. The man was Brooke's husband.

our church and some other things we had planned," which was why he refused the summer vacation trip.

Tommy conceded that he did not let G.W. wear pants or jeans, although he said she could wear culottes when she played sports. He also agreed that he had punished G.W. for wearing pants at her mother's house because he expected his rules and discipline to be followed even when G.W. was not in his home. Tommy further acknowledged whipping G.W. with a belt and taking her door off its hinges over the iPod incident, even though she had never brought the iPod to his home; he explained that she knew she was not supposed to listen to the music buy still disobeyed him.

Tommy asserted that he had swapped visitation with Brooke on numerous occasions. He complained, however, that there had been instances in which Brooke had not brought G.W. home after visitation when she was supposed to. Tommy said that he was concerned that Brooke would violate the court's orders if she obtained custody of G.W. because Brooke "just does what she wants."

Regarding G.W.'s dress, Tommy denied that he had a dress code and said that G.W. had a choice as to what she could wear at home, although he said that there were "certain limits" in that her clothing had to be "modest." Tommy said that G.W. was "a teenager," and even though she would get in trouble over things such as the iPod, she would "fess up" to things when Tommy found out. Tommy acknowledged that he was "rather strict" on G.W. and said that there was no middle ground between his house and Brooke's house on issues like the music G.W. wanted to listen to. On the whole, though, Tommy said that his relationship with G.W. was "pretty good."

G.W. testified next at the hearing, stating that she wanted to live with her mother and be in her mother's custody. G.W. said that her father had promised her mother that "whenever [Brooke] straightens her life, I can come back to her, and she straightened her life, and he won't let me go back." G.W. said she felt like she needed to be in her mother's life because she needed a mother during her teenage years. G.W. testified that she was really close with her father but not as close with her mother because she had not had a chance to share herself with Brooke as much as she did with Tommy.

G.W. explained that the dress-code issue was "not a problem" but that she would like to wear pants. She also said that her father did not allow her to go to social events that were not associated with his church, and she was not allowed to go to the mall with friends. G.W. said she did not even ask her father if she could do certain things like going to the movies because "he doesn't believe in going to the movies."

G.W. stated that she believed that, if she was placed in her mother's custody, Brooke would work with Tommy and allow G.W. to have a good relationship with her father and visitation when he asked for it. When asked by the trial court whether anything had changed with her father in the last two years, other than G.W.'s growing older, however, G.W. said no. On redirect examination, G.W. agreed that she told the court that nothing had changed about her father, but she said she did not know "what you mean by changed." She said she was nervous about testifying, but she felt very strongly and was absolutely certain that she wished to live with her mother. That desire, she said, was something that had changed.

At the conclusion of the testimony, Tommy moved for a directed verdict, arguing

that there had been no evidence that there had been any material change in circumstances. The court agreed, noting that Tommy had been very strict two years ago and was still strict now, and that G.W. had been attending the same school two years ago as she was now. The court did, however, point out to Tommy that, even though he was doing things out of love for his daughter, Tommy was "damaging his future with her and her ability to enjoy her teenage years in an appropriate way." Despite Tommy's parenting style, the court ruled that it did not have "enough under the law to change custody."

The circuit court entered its order denying Brooke's motion for change of custody on August 2, 2010, and Brooke filed a timely notice of appeal on August 13, 2010. Brooke's sole point on appeal is that the court erred in finding that there had been no evidence of a significant change in circumstances that would have warranted a change in custody.

Here, our review is directed toward the circuit court's grant of Tommy's motion to dismiss. It is the circuit court's duty, in deciding a motion to dismiss made after the presentation of the plaintiff's case, to determine whether, if the case were a jury trial, there would be sufficient evidence to present to a jury. *Wagner v. Wagner*, 2011 Ark. App. 475, at 2, 2011 WL 2557619 (citing *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 264, 61 S.W.3d 835, 838 (2001)). The circuit court does not exercise its fact-finding powers, such as judging the witnesses' credibility, in making this determination. *Id.* On appeal, we view the evidence in the light most favorable to the nonmoving party, giving the proof presented its highest probative value and taking into account all reasonable inferences deducible therefrom. *Id.* We affirm if there would be no substantial evidence to support a jury verdict.

*Id.* In other words, when "the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed." *Id.* at 2–3.

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Harris v. Harris*, 2010 Ark. App. 160, 379 S.W.3d 8. A judicial award of custody will not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree will be in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that either were not presented to the circuit court or were not known by the circuit court at the time the original custody order was entered. *Id.*; *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009). Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Grisham v. Grisham*, 2009 Ark. App. 260, 2009 WL 936952. The reasons for requiring more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the life of the child, and to discourage repeated litigation of the same issues. *Id.* The party seeking modification has the burden of showing a material change in circumstances. *Byrd v. Vanderpool*, 104 Ark. App. 239, 290 S.W.3d 610 (2009).

With these standards in mind, we cannot say that the circuit court was wrong in denying Brooke's motion for change of custody. The primary concerns about which Brooke testified were that Tommy was too strict in his discipline, that he would not allow G.W. to wear the clothes she wanted, and that G.W.'s schooling might be a problem when she applied for

colleges. These circumstances, however, were no different than they were when Tommy obtained full custody of G.W. in 2008, as Brooke conceded. In fact, as noted above, G.W. herself testified that nothing had changed since the custody order entered two years previously, with the exception of her desire to live with her mother. The trial court, however, had the discretion to decline to give weight to the child's preference, and the child's desires were not binding on the court. *Turner v. Benson*, 59 Ark.App. 108, 953 S.W.2d 596 (1997).

Brooke argues that Tommy has engaged in a "continual pattern of parental alienation." She points to statements by Tommy that he does not want G.W. to "turn out like her mother," and asserts that Tommy refused to put her on a list at G.W.'s school of persons with access to the child's information. Brooke also complains that Tommy consistently denied her requests to modify visitation so that G.W. could attend events with Brooke's family.[3] All of these things, Brooke contends, add up to a persistent attempt to alienate her from her daughter.

In support of her argument, Brooke cites *Carver v. May*, 81 Ark.App. 292, 101 S.W.3d 256 (2003). In that case, however, the trial court granted the father's motion to change custody after he demonstrated that the mother refused the father's attempts at visitation; interfered with phone visitation; called in an "anonymous tip" to police officers that led police and drug agents to surround the father's car when he arrived at his hotel attempting to exercise his visitation; and made unsubstantiated allegations of sexual abuse against the father. Brooke's complaints, which pale in comparison, simply are not of the category or degree of "alienation" that would constitute a material change in circumstances.

Finally, Brooke argues that G.W.'s wish to live with her mother should have been given greater weight and deference by the trial court. As noted above, a child's preference is certainly a factor to be considered by the trial court in deciding whether a change of custody is in a child's best interest; however, the court must first determine the threshold requirement of whether a material change in the circumstances of the parties has occurred since the last order of custody. *Henley v. Medlock*, 97 Ark.App. 45, 244 S.W.3d 16 (2006); *see also Stacks v. Stacks*, 2009 Ark. App. 862, 377 S.W.3d 265. Because the court here correctly found that there had not been a material change in circumstances, it was not error for the court to decline to give any greater weight to G.W.'s wishes.

Because we are unable to conclude that the circuit court erred in finding that Brooke failed to meet her burden of demonstrating the existence of a material change in circumstances, we must affirm.

Affirmed.

WYNNE and HOOFMAN, JJ., agree.

---

**3.** To the extent that Brooke complains that Tommy refused to cooperate with visitation, the record indicates that Brooke herself was also inconsistent with complying with the court's orders regarding visitation.