2012 Ark. App. 351

**Michael WILSON, Appellant**

v.

**Sara POWERS, Appellee.**

**No. CA 11–883.**

Court of Appeals of Arkansas.

May 16, 2012.

Richard E. Worsham, Worsham Law Firm, P.A., Little Rock, for Appellant.

CLIFF HOOFMAN, Judge.

Appellant Michael Wilson appeals from the trial court's orders denying his petition for change of custody, modifying his child support, and deciding issues related to visitation. We affirm.

The parties were divorced on August 3, 2005, in Oklahoma. On July 2, 2008, a Utah court entered an order modifying the divorce decree. Under the terms of the Utah order, Wilson was awarded custody of the parties' son, and Powers retained custody of the parties' two daughters. Both parties subsequently lived in Arkansas until Powers moved to New York. On August 23, 2010, Wilson filed an ex parte petition for an order of protection shortly before the parties' daughters were supposed to return to New York from their visit with Wilson in Arkansas. Wilson alleged that the order was necessary for the children's safety and requested temporary custody of the parties' daughters. The petition was granted. On September 2, 2010, Wilson filed a petition for change of custody, alleging that there had been a material change of circumstances and that it would be in the best interest of the children that he be awarded custody of the parties' two daughters. Powers filed a response to the petition and a counterclaim, as well as an amended counterclaim, alleging that Wilson had made false allegations and that there had been a material change of circumstances to justify a modification of child support and visitation.

A hearing was held on September 29, 2010, at which Wilson and two of the parties' children testified. At the conclusion of their testimony, Powers moved for a directed verdict, arguing that Wilson had not met the burden of proof regarding a substantial change of circumstances necessary for a change in custody. The trial court granted the motion and denied the petition to change custody. An order was entered on October 13, 2010. On October 25, 2010, Wilson filed a motion for reconsideration, a response to Powers's amended counterclaim, a motion to modify decree, and a motion for contempt. Another hearing was held on January 31, 2011, where both parties testified as to the issues of child support and visitation. At the conclusion of the hearing, the trial court announced findings regarding contempt, child support, and visitation issues, and on March 10, 2011, the trial court entered an order reflecting these findings. On March 18, 2011, Wilson filed a motion for relief from the order and modification,

alleging, among other things, that the trial court erred in calculating the amount of child support. The trial court did not rule on this motion. Wilson filed a notice of appeal on April 8, 2011. Along with her brief on appeal, Powers filed a motion to dismiss the appeal as to the child-custody order. She argued that Wilson's notice of appeal was untimely to appeal the custody order because it was filed almost six months after entry of the order.[1] This court certified the motion to the supreme court, which denied the motion to dismiss. Thus, the child-custody issue is properly before us.

First, Wilson argues that the trial court erred in determining that it was in the best interest of the children to deny the change-of-custody petition. In child-custody cases, the primary consideration is the welfare and best interest of the child involved. *Bernal v. Shirley*, 96 Ark.App. 148, 239 S.W.3d 11 (2006). Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the child. *Id.* Factors the trial court may consider in determining the best interest include the psychological relationship between the parent and the child, the need for stability and continuity in the child's relationship with the parents and siblings, the past conduct of the parents toward the child, and the reasonable preference of a child. *Myers v. McCall*, 2009 Ark. App. 541, 334 S.W.3d 878. It is the trial court's duty, in deciding a motion to dismiss made after the presentation of the plaintiff's case, to determine whether, if the case were a jury trial, there would be sufficient evidence to present to a jury. *Hobby v. Walker*, 2011 Ark. App. 494, 385

S.W.3d 331. On appeal, we view the evidence in the light most favorable to the nonmoving party, giving the proof presented its highest probative value and taking into account all reasonable inferences deducible therefrom. *Id.* We affirm if there would be no substantial evidence to support a jury verdict. *Id.* In other words, when "the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed." *Id.*

Wilson argues that it is not in the best interest of the children to remain in Powers's custody because Powers has allowed the use of illegal drugs in the home, allowed the children to drive, and does not treat the children equally. He also argues that the trial court should have considered his daughter's expressed desire to live with him. Finally, Wilson argues that Powers avoided informing him of her physical address, refused to allow him to pick up the children at her house, interfered with visitation by making other plans, refused to cooperate in the arrangement of flights, and allowed the excessive use of alcohol around the children.

A.S.W., the parties' eleven-year-old daughter, and M.D.W., the parties' thirteen-year-old son, both testified about driving their grandmother's car in Flippin, Arkansas. Powers and the parties' two daughters lived with Powers's parents while her current husband was deployed overseas. A.S.W. testified that she drove the car once in the backyard and once down the dirt road near their grandmother's house. M.D.W. testified that, when he was visiting his mother at his grandmother's house on his spring break, he drove

---

**1.** Powers cited *In re Estate of Stinnett*, 2011 Ark. 278, 383 S.W.3d 357, arguing that because custody orders are final, appealable orders, they are not intermediate orders that are brought up for review on appeal from a later, final order pursuant to Arkansas Rule of Appellate Procedure—Civil 2(b).

the car about ten times either in the backyard or down the dirt road to his aunt's house, which he said was about thirty seconds away. He said that on one occasion his grandmother had been drinking when he drove, but he said no one asked him to drive for that reason. A.S.W. testified that their mother had never asked them to drive her home because she was drunk. A.S.W. testified that she once saw her grandfather and uncle, along with some friends, smoking something brown and long and passing it around; she thought it looked like a cigar. A.S.W. said that she was outside while they were smoking in the house because her mother did not allow anyone to smoke around the children. M.D.W. testified that his grandfather smoked tobacco in a pipe, and he saw the pipe being passed around on one occasion. M.D.W. testified that he had heard that his mother had a tattoo of his sisters' names, and he said that she told him she planned to get one of his name.

A.S.W. said she was happy living with her dad and wanted to continue living with him, not because she did not like her mom, but because she wanted to try living with her dad and spending more time with her dad and brother. M.D.W. testified that he was happy living with his father and wanted to continue to do so. He said that, since he began living with his dad, he had seen his mother on three occasions. He said that his mother was supposed to visit him for a weekend in April, but she did not come. Wilson testified that Powers did not even call to say she was not coming. M.D.W. and Wilson both testified that M.D.W. missed his summer visitation with Powers because of problems with his flight. Wilson wanted Powers to pay for M.D.W. to have an unaccompanied-minor escort because he was required to connect flights in a small window of time. Wilson said that Powers thought M.D.W. was old enough to fly alone and that she refused his offer to pay the escort fee as a loan. Wilson did not let M.D.W. make the trip. Emails between Wilson and Powers were introduced, which reflected arguments the parties had over exchanging the children. Wilson said that Powers refused to give him her physical address when she was staying with her parents and refused to allow him to pick the girls up at the house, despite previous orders that pick-ups would be at her house. Wilson also testified that he had to reschedule the girls' flights that summer because Powers said she was busy the day they were supposed to fly out, even though they had previously agreed to that date. Wilson said that Powers had only called M.D.W. about ten times in the past two years that he had been living with Wilson. He said Powers does not treat him the same as she did before he lived with Wilson. Wilson testified that Powers did not have the children's best interest in mind and had a disregard for their well being. He attempted to testify that there was drug and alcohol abuse in Powers's mother's home, but Powers's objection was sustained for lack of foundation.

In granting the motion for directed verdict, the trial court explained that it could relate to teaching children how to drive on dirt roads and found that it did not appear that the children drove on a heavily traveled dirt road. The trial court acknowledged that Wilson wanted the court to assume that the children's grandfather and uncle were smoking marijuana, but the court found that there was no proof of that. The court found that A.S.W. would be happy living with either parent and that M.D.W. was not affected by his mother's tattoo. The court found that Wilson's statements made in the ex parte order were not supported by the testimony. Ultimately, the trial court found that "[n]owhere did any of these kids allege any-

thing about them being mentally abused or physically abused or treated improperly," and there was no proof of any moral or financial instability.

■ We hold that the trial court did not err in finding that Wilson failed to demonstrate the existence of a material change in circumstances. Wilson's arguments about illegal drug use and excessive alcohol use were not proved. His complaints about the children driving and the treatment of M.D.W. are not circumstances affecting the children's welfare. The rest of Wilson's complaints are merely examples of the parties' lack of cooperation with each other. Lastly, the trial court considered A.S.W.'s desire to live with her father, but that was only one factor to consider. We affirm the denial of the petition for change of custody.

■ Wilson next argues that the trial court erred in setting the amount of child support due to misreading the support chart and erred in finding that his child-support obligation was retroactive to the date of the filing of the petition, September 14, 2010. Wilson claims that he brought these issues to the trial court's attention in his motion for relief and modification of the order, but the trial court failed to correct the issues. Powers argues that these issues are not properly before us because Wilson first raised them in his posttrial motion, and he did not appeal the denial of that motion.

Arkansas Rule of Appellate Procedure—Civil 4 (2011) provides in part as follows:

(b) Extension of Time for Filing Notice of Appeal.

(1) Upon timely filing in the circuit court of a motion for judgment notwithstanding the verdict under Rule 50(b) of the Arkansas Rules of Civil Procedure, a motion to amend the court's findings of fact or to make additional findings under Rule 52(b), a motion for a new trial under Rule 59(a), or any other motion to vacate, alter, or amend the judgment made no later than 10 days after entry of judgment, the time for filing a notice of appeal shall be extended for all parties. The notice of appeal shall be filed within thirty (30) days from entry of the order disposing of the last motion outstanding. However, if the circuit court neither grants nor denies the motion within thirty (30) days of its filing, the motion shall be deemed denied by operation of law as of the thirtieth day, and the notice of appeal shall be filed within thirty (30) days from that date.

(2) A notice of appeal filed before disposition of any of the motions listed in paragraph (1) of this subdivision shall be treated as filed on the day after the entry of an order disposing of the last motion outstanding or the day after the motion is deemed denied by operation of law. Such a notice is effective to appeal the underlying judgment, decree, or order. A party who also seeks to appeal from the grant or denial of the motion shall within thirty (30) days amend the previously filed notice, complying with Rule 3(e). No additional fees will be required for filing an amended notice of appeal.

Due to the filing of Wilson's postjudgment motion, the time for filing a notice of appeal was within thirty days from the date the motion was deemed denied by operation of law. Because his notice of appeal was filed before his motion was deemed denied, it was treated as filed the day after the motion was deemed denied. To appeal the denial of his motion, Wilson was required to amend his previously filed notice. Because Wilson did not amend his notice of appeal to include the denied posttrial motion, the arguments raised in it concerning the amount of child support and the

effective date cannot be addressed on appeal. *See Vibo Corp., Inc. v. State ex rel. McDaniel,* 2011 Ark. 124, 380 S.W.3d 411.

■ Wilson's last argument is that the trial court erred in determining that all airline tickets for the children must be purchased as round-trip tickets and must be to airports within a one hundred-mile radius of the parties' residences. Wilson testified at the January 31, 2011 hearing that he wanted the parties to continue the arrangement of each parent buying a one-way ticket for the children to fly to them. He claims that he presented uncontroverted evidence that purchasing round-trip tickets limited the available flights and increased the costs. Wilson also claims that it would be cheaper for the parties and safer for the children if arrangements could be made to depart and arrive from airports where there are direct flights, even though it would require both parties to drive three or four hours to the airport.

■ In reviewing domestic-relations cases, appellate courts consider the evidence de novo. *Baber v. Baber,* 2011 Ark. 40, 378 S.W.3d 699. We will not reverse the circuit court's findings unless they are clearly erroneous. *Id.* The primary consideration regarding visitation is the best interest of the child. *Id.* Important factors the court considers in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. *Id.* Fixing visitation rights is a matter that lies within the sound discretion of the circuit court. *Id.*

The trial court stated at the hearing that it wanted round-trip tickets bought well in advance so that the children could plan their schedules and would not have to worry about a parent buying them a one-way ticket at the last minute. The trial court found that a round-trip ticket bought in advance was cheaper than two one-way tickets and ruled that the tickets were to be to airports within 100 miles of the parties' homes to prevent any more four-hour drives to airports. The trial court stated that it was setting these requirements for the sake of the children, not the parents, and that it wanted to try to make visitation as easy on the children as it could. As Powers argues, although Wilson may not agree, the trial court's reasoning was thoughtful and with the children's best interest in mind. We hold that the trial court did not err in setting visitation requirements.

Affirmed.

PITTMAN and WYNNE, JJ., agree.