SLIP OPINION

# SUPREME COURT OF ARKANSAS

**No.** CV–14–1059

| | |
|---|---|
| CHERI SUZANNE MCCOY | **Opinion Delivered:** October 29, 2015 |
| APPELLANT | APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT [NO. DR-2004-539-4] |
| V. | |
| VERNON JEFFREY KINCADE | HONORABLE GORDON WEBB, JUDGE |
| APPELLEE | AFFIRMED. |

### RHONDA K. WOOD, Associate Justice

This is an appeal from the circuit court's modification of the parties' custody agreement. Appellant, Cheri Suzanne McCoy, challenges the circuit court's finding that there has been a material change of circumstances necessitating a modification in custody. McCoy argues that the circuit court primarily relied on the passage of time since the agreement, which standing alone is insufficient to support a material change in circumstances. We affirm the decision of the circuit court.

McCoy and appellee, Vernon Kincade, divorced in 2004. They were awarded joint custody of the minor children, C.K. and A.K., who were then three and five years old. The circuit court approved their child-custody and property-settlement agreement, which provided that Kincade would have the children Sunday evenings through Friday evenings. McCoy had custody of the children Thursday evenings and the first three weekends of the month and the fifth weekend of any month with five weekends. McCoy had five weeks of summer visitation, which included two weeks in June, two weeks in July and one week in

1

August, none of which were to be consecutive. At the time of the entry of the agreement both parties resided in Mountain Home. However, approximately one month following the divorce, McCoy moved to Fayetteville, a distance of over 120 miles from Kincade and the children. Additionally, both parents had remarried since their divorce.

In 2013, Kincade filed a petition to modify custody and visitation alleging that a material changes in circumstances had occurred. McCoy counterfiled for modification of the custody agreement.[1] The circuit court, after hearing testimony from McCoy, Kincade, and the children, determined that there had been a material change of circumstances and that it was in the children's best interest to be in the primary custody of Kincade. It awarded McCoy a slight variation of the prior custody arrangement on standard visitation.

McCoy's appeal to the court of appeals followed. The court of appeals affirmed the circuit court's decision, and we granted McCoy's petition for review from the court of appeals.

When this court grants a petition for review of a decision from the court of appeals, we treat the matter as if it had been originally filed in this court. *Singletary v. Singletary,* 2013 Ark. 506, 431 S.W.2d 234. We review appeals in domestic relation cases de novo and will not reverse the circuit court's finding of fact unless it is clearly erroneous. *Id.* In cases involving children, the circuit court is clearly in a superior and unique position to observe the parties and we give great deference to the court's findings of facts. *Stills v. Stills,* 2010 Ark. 132, 361 S.W.3d 823.

---

[1]Notably, McCoy also alleged a material change of circumstances in her counter-petition for custody.

When a change of custody is sought in a joint-custody arrangement, the circuit court first must determine that there has been a material change of circumstances from the time the divorce decree originally was entered. *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234. Only after meeting that threshold will the court then consider what is in the best interest of the children. *Id.*

McCoy's appeal challenges only the court's finding that a material change of circumstances has transpired since the agreement. She does not dispute the circuit court's determination that the change in custody is in the best interest of the children. McCoy argues the circuit court relied primarily on the passage of time since the custody agreement and that factor, standing alone, is insufficient to warrant a change of custody. However, the circuit court's consideration of the passage of time was but one of several factors on which it relied in deciding there was a material change of circumstances. In any event, we previously have found that the passage of time is one factor the court may consider in finding a material change of circumstances. *See Myers v. McCall*, 2009 Ark. 541, 334 S.W.3d 878; *see also Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999).

The most important material change of circumstances was McCoy's move to Fayetteville, which the circuit court said altered the "fundamental nature of the original joint custody agreement . . . with the potential to significantly impact the children" when McCoy moved to Fayetteville. The court went further to explain, "the nature of the original custody agreement has changed in that the children have matured to a point in their lives where their school activities and the social interaction with their classmates has become

significantly more important." The court found that a "significant change" occurred affecting the well-being of the children.

Upon a de novo review of the record and giving deference to the circuit court's finding of facts, we cannot say this finding was in error. McCoy's move to Fayetteville clearly impacted the parties' original custody agreement and was significantly impacting the children's lives and well-being. There was considerable evidence that the custody agreement, which provided McCoy with a vast majority of the weekend visitation, drastically affected the children because she no longer resided in the same city or even county.

Although the parties attempted to make the custodial agreement work over the eight years following their divorce, it came to the point that Kincade believed the children's weekends away from their activities and friends was harming their development. The children were missing a large number of social events that the circuit court, to whom we give deference, considered was materially affecting their well-being.

For example, C.K., who was 14 years old and in the ninth grade, testified that he had always been involved in school athletics and had played football since the peewee league. He was the quarterback and a linebacker; however, the visitation schedule caused him to miss summer workouts and weekend games, which negatively impacted his practice and performance. He further testified that he had to quit baseball because his mother would not allow them to work the visitation around it. C.K. did not want to stop visiting his mother, but simply was asking for relief from three weekends a month to two weekends a month. A.K., who was 12 years old, also desired a more traditional visitation schedule,

which included staying with her mother in Fayetteville every other weekend. She testified to missing the Christmas play and being limited to activities she could join due to the visitation schedule. Ultimately, the evidence suggested that McCoy did not seem to grasp the importance of the children's activities. Nor did she encourage participation by allowing the children to keep their social commitments in Mountain Home during her visitation. Both children testified that they now had a strained relationship with their mother in part due to the visitation schedule.

The factors in this case are all factors that we have held are appropriate when determining if there has been a material change of circumstances. These factors include, but are not limited to, one parent's relocation, the passage of time, remarriage of one or both parents, strained relationship between the parent and child, and the preference of the children. *See Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002); *Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999). All of these factors were present in this case and their combined effect supports the circuit court's holding that there was a material change of circumstances.

Affirmed.

Special Justice HENRY KINSLOW joins.

Special Justice JOSEPH C. SELF concurs.

BAKER and HART, JJ., dissent.

GOODSON and WYNNE, JJ., not participating.

**JOSEPH C. SELF, Special Justice, concurring.** I concur in the majority opinion, as there was sufficient evidence presented to the circuit court to warrant a

modification of the divorce decree, but I would have decided the issue regarding the existence of a material change of circumstances on the pleadings of the parties alone.

As mentioned in a majority-opinion footnote, after Kincaid filed his motion to modify the existing joint-custody order to receive an award of sole custody, McCoy filed a counterclaim, also asking for a modification that would award custody to her. I find that to be highly significant and determinative as to the issue about whether circumstances had materially changed.

As the majority opinion recites, the original joint-custody arrangement in this matter was part of a "Child Custody and Property Settlement Agreement," which was incorporated into the divorce decree. Thus, at the time of the divorce, the trial court did not take testimony and make a determination as to custody; rather, it simply approved the arrangement the parties represented would be best for themselves and their children. Ideally, that is how it should be; the parents are in a far better position to know what it best for their children than a judge, who only knows what can be presented within the bounds of the pleadings and rules of evidence about the parties and their children. If parties who are dissolving their marriage can come to an agreement regarding the welfare of their children, the likelihood of success is far better than having an arrangement imposed upon them.[1]

---

[1]Part of the rationale behind mediated agreements in divorce and custody matters is that parties are normally more satisfied about an arrangement they have agreed to as opposed to something imposed upon them, and thus more likely to cooperate within the spirit of the agreement rather simply comply with the letter of the decree.

After the motion, answer and counterclaim were filed, both parties had asserted they did not believe continued joint custody was feasible. Both were specific about why the arrangement was not working, and while each submitted different reasons for why things had changed, they were again in agreement—at least tacitly—it was time to modify the existing decree to a more traditional custody visitation order. "The mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the child's welfare is a crucial factor bearing on the propriety of joint custody," *Dansby v. Dansby*, 87 Ark. App. 156, 189 S.W.3d 473 (2004). Such reasoning applies whether it was an initial agreement at the time of the divorce or if subsequent developments caused the parties to be unable or unwilling to cooperate. It would have been extremely presumptuous of the trial court to see the pleadings of both parties and to hear their testimony only to then say "you are both wrong, you can still cooperate." In *Doss v. Miller*, the court of appeals found: "There was a mountain of evidence in this case demonstrating that the parties could no longer cooperate in reaching shared decisions in matters affecting their children." 2010 Ark. App. 95, 377 S.W.3d 388. The order continuing joint custody in *Doss* was reversed in light of the allegations each parent made against the other. The opinion recited the two versions of the allegations each made against the other, without a finding of which one was true; that each party had significant complaints against the other was sufficient for the joint-custody order to be modified. Such would have sufficed for me in this matter.

This is not to say that one party can unilaterally end a joint custody arrangement simply by making allegations against the other. However, when both parties have come before a court alleging that joint custody is no longer working, even if each is citing different


reasons, I would find that fact alone sufficient for a trial court to find a material change in circumstances. Such a finding would eliminate the necessity of having each party lay out in detail why joint custody did not work in the past and allow the parties and the court to focus instead on what is in the best interest of the children going forward.

We review child-custody cases de novo, but will reverse only if the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* In reviewing the circuit court's findings that there was a material change in circumstances, I am left with a definite and firm conviction that a mistake has been made.

I. *Material Change in Circumstances*

On appeal, McCoy argues that the circuit court erred in finding that there was a material change in circumstances sufficient to warrant a modification of the original custody agreement. For a circuit court to modify the custody of children, it must first determine that a material change in circumstances has transpired from the time of the divorce decree and, then, determine that a change in custody is in the best interest of the child. *Lewellyn v. Lewellyn*, 351 Ark. 346, 355, 93 S.W.3d 681, 686 (2002) (citing *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001)). In order to avoid the relitigation of factual issues already decided, courts will restrict evidence in a modification proceeding to facts arising since the issuance of the prior order. *Campbell v. Campbell*, 336 Ark. 379, 985 S.W2d 724 (1999). Courts impose more stringent standards for modifications in custody than for initial

SLIP OPINION

determinations of custody in order to promote stability and continuity in the life of the child. *Alphin v. Alphin*, 364 Ark. 332, 219 S.W.3d 160 (2005). The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Id.* Based on these more stringent standards for modifications of child custody and because Kincade failed to meet his burden to demonstrate a material change in circumstances, the circuit court clearly erred in its determination that a material change in circumstances occurred.

## II. *McCoy's Relocation*

With the above standards in mind, we must consider whether the circuit court's finding that McCoy's relocation to Fayetteville constituted a material change in circumstances. In its September 20, 2013 letter opinion, the circuit court held as follows:

> [T]he parties entered into an agreement that was described as joint custody with the children spending each week during the school year with their father and the first three weekends of each month with their mother, the fourth weekend with their father (with their mother having time with the children that week on Thursday night), and the fifth weekend if there was one, with their mother. The Court approved this arrangement and the terminology that it was joint custody based on the Court's understanding that both parties resided in Mountain Home and this arrangement was essentially a true joint custody arrangement with the children spending roughly equal time with both parents.
>
> The testimony at trial established that the arrangement has never been as the Court believed it was. Within a month the respondent, Ms. McCoy, had moved to Fayetteville. Once she did that the aspects of this agreement that the Court understood made it joint custody no longer truly existed. The parties apparently immediately made adjustments and rearrangements to the Court's order and have lived with the original agreement, with modifications, for the past nine years. It is the Court's finding that the fundamental nature of the original agreement of "joint custody" changed with the potential to significantly affect the well being of the children. To their credit, the parties have made it work for the past eight, going on nine, years until it came to affect the lives of the children as they grew older.

Here, a review of the record demonstrates that there was not a material change in circumstances.  It is unclear how the "fundamental nature of the original agreement of 'joint custody' changed with the potential to significantly affect the well being of the children." When McCoy moved to Fayetteville, the parties immediately modified the schedule to remove McCoy's Thursday visitation; however, the remainder of the original order remained the same for almost nine years.  The original child-custody agreement stated as follows:

> The general scheme of physical custodial time with the children set out above is subject to change by agreement of the parties.  The parties commit to being flexible with each other so as to meet the children's need to spend time with both of their parents.

Based on the language of the original child-custody agreement, McCoy and Kincade were free to modify the physical custodial time with the children, which they did for almost nine years.  Pursuant to the original custody agreement, the parties agreed to be flexible in order to meet the children's need to spend time with both parents.  The parties' physical custodial arrangement, for the last nine years, demonstrates their compliance with the original child-custody agreement.  The custodial arrangement has been consistent for almost nine years; therefore, McCoy's move to Fayetteville did not amount to a material change in circumstances.

Further, the circuit court found that the "initial move by the respondent to Fayetteville by itself did not significantly change the circumstances contrary to the children's best interests, but it did significantly change the fundamental nature of the custody arrangement back in 2005 by making it no longer anything resembling a 'joint custody'

arrangement with shared equal time between the parents." However, the circuit court expressed its "admiration for the job done by both parents to this point" and expressed its belief that the "parents made the best of this changed circumstance until the present."

I cannot agree with the circuit court's finding that McCoy's move to Fayetteville constituted a material change in circumstances sufficient to warrant modification. As noted above, the circuit court repeatedly praised McCoy and Kincade for their ability to modify the original agreement for almost nine years, thus it is unclear, in the almost nine-year span of modifications, when McCoy's move to Fayetteville transformed into a material change of circumstances. McCoy's move simply did not amount to a material change in circumstances.

### III.  *Maturation of the Children*

As to the circuit court's second finding of a material change in circumstances, the circuit court stated,

> [T]he children have matured to a point in their lives where their school activities and the social interaction with their classmates has become significantly more important to them than it was in 2004 when they were four and seven years old. Now at twelve and almost fifteen, these two young people are having a very difficult time living a normal teenage social life, and developing and maintaining friends and activities that are all oriented around the school and the church where they primarily live. It appears that they are forced by their parent's previous agreement, to go away almost every weekend and not have time to socially interact with their friends, schoolmates and church activities that come up on the weekends starting on Friday night.

> The Court considers this social interaction between young people and the activities that social interaction revolves around (sports, attending games and social events and church activities) to be essential to the healthy development of young people.

During the custody hearing, the children clearly expressed a preference to spend more time with their father. However, in *Hobby v. Walker*, our court of appeals correctly explained that a "child's preference is certainly a factor to be considered by the trial court in deciding whether a change of custody is in a child's best interest; however, the court must first determine that the threshold requirement of whether a material change in the circumstances of the parties has occurred since the last order of custody." 2011 Ark. App. 494 at 9, 385 S.W.3d 331, 336.

The fact that the children have matured to the point where school and social activities have become more important to them does not amount to a material change in circumstances. The circuit court erroneously determined that the threshold requirement of a material change in circumstances had occurred. Because the threshold requirement of a material change in circumstances was not met in this case, it was erroneous for the circuit court to consider the children's preferences, which is a factor to be considered in deciding whether a change of custody is in the best interest of the children. Stated differently, because the threshold requirement of a material change in circumstances was not met, the circuit court clearly erred in considering the preferences of the children. *Hobby*, *supra*.

The majority states that "the evidence suggested that McCoy did not seem to grasp the importance of the children's activities. Nor did she encourage participation by allowing the children to keep their social commitments in Mountain Home during her visitation." It is unclear how the modified custody arrangement will resolve the children's conflicts with their social and school activities. Under the original agreement, McCoy had the children during the first three weekends of the month and any fifth weekend. However, under the

modified arrangement, McCoy was awarded standard every-other-weekend visitation. The modified arrangement will decrease the amount of time at McCoy's by only one weekend per month plus the fifth weekend in months with an additional weekend. During his testimony, C.K. admitted that he would still miss out on activities even if the time spent with his mother was decreased to every-other-weekend visitation. Thus, it is unclear how the modified arrangement will remedy the children's alleged conflicts with social and school activities.

Today the majority is establishing dangerous precedent. As noted above in *Alphin*, courts impose more stringent standards in child-custody modifications than for initial determinations of custody. The more stringent standards are utilized in order to promote stability and continuity in the life of the child. *Alphin*, *supra*. As a child matures, his interests in social and school activities are constantly changing. If a modification of a child-custody agreement is allowed to proceed on this basis, there will never be finality in Arkansas child-custody agreements.

The circuit court clearly erred in finding that McCoy's move to Fayetteville and the maturation of the children rose to the level of a material change in circumstances warranting a modification of child custody. Therefore, I respectfully dissent.

HART, J. joins in this dissent.

*Taylor Law Partners, LLP*, by: *William B. Putman*, for appellant.

*Emily Reed*, for appellee.