Joseph C. Self, Special Justice, concurring. I concur in the majority opinion, as there was sufficient evidence presented to the circuit court to warrant aj^modificatiom of the divorce decree, but I would have decided the issue regarding the existence of a material change of circumstances on the pleadings of the parties alone. As mentioned in a majority-opinion footnote, after Kincade filed his motion to modify the existing joint-custody order to receive an award of sole custody, McCoy filed a counterclaim, also asking for a modification that would award custody to her. I find that to be highly significant and determinative as to the issue about whether circumstances had materially changed. As the majority opinion recites, the original joint-custody arrangement in this matter was part of a “Child Custody and' Property Settlement Agreement,” which was incorporated into the divorce decree. Thus, at the time of the divorce, the trial court did not take testimony and. make a determination as to custody; rather, it simply approved the arrangement the parties represented would be best for themselves and their children. Ideally, that is how it should be; the parents are in a far better position to know what it best for their children than a judge, who only knows what can be presented within the bounds of the pleadings and rules of evidence about the parties and their children. If parties who are dissolving their marriage can come to an agreement regarding the welfare of their children, the likelihood of success is far better than having an arrangement imposed, upon them.[1] 17After the motion, answer and counterclaim were filed, both parties had asserted they did not believe continued joint custody was feasible. Both were specific about why the arrangement was not working, and while each submitted different reasons for why things had changed, they were again in agreement — at least tacitly — it was time to modify the existing decree to a moré traditional custody visitation order. “The mutual ability of the parties to cooperate in reaching shared' decisions in matters' affecting the child’s welfare is a crucial factor bearing on the propriety of joint custody,” Dansby v. Dansby, 87 Ark. App. 156, 189 S.W.3d 473 (2004). Such reasoning applies whether it was an initial agreement at the time of the divorce or if subsequent developments caused the parties to be unable or unwilling to cooperate. It would have been extremely presumptuous of the trial court to see the pleadings of both parties and to hear their testimony only to then say “you are both wrong, you can still cooperate.” In Doss v. Miller, the court of appeals found: “There was a mountain of evidence in this case demonstrating that the parties could no longer cooperate in reaching shared decisions in matters affecting their children.” 2010 Ark. App. 95, 377 S.W.3d 348. The order continuing joint custody in Doss was reversed in light of the allegations each parent made against the other. The opinion recited the two versions of the allegations each made against the other, without a finding of which one was true; that each party had significant complaints against the other was sufficient for the joint-custody order to be modified. Such would have sufficed for me in this, matter. This is not to say that one party can unilaterally end a joint custody arrangement simply by making allegations against the other. However, when both parties have come before a court alleging that joint custody is no longer working, even if each is citing different treasons, I. would find that fact alone sufficient for a trial court to find a material change in circumstances. Such a finding would eliminate the necessity of having each party lay out in detail why joint custody did not work in the past and allow the parties and the court to focus instead on what is in the best interest of the children going forward. Karen R. Baker, Justice, dissenting. We review child-custody cases de novo, but will reverse only if the circuit court’s findings are clearly erroneous or clearly against the preponderance of the evidence. Stehle v. Zimmerebner, 375 Ark. 446, 291 S.W.3d 573 (2009). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and-.firm conviction that a mistake has been. committed. Id. In reviewing the circuit court’s findings that there was a material change in. circumstances, I am left with a definite and firm conviction that a mistake has been made. I. Material Change in Circumstances On appeal, McCoy argues that the circuit court erred in finding that there was a material change in circumstances sufficient to warrant a modification of the original custody agreement. For a circuit court to modify the custody of children, it.must first determine that a material change., in circumstances has transpired from the time of the divorce decree and, then, determine that a change in custody is in the best interest of the child. Lewellyn v. Lewellyn, 351 Ark. 346, 355, 93 S.W.3d 681, 686 (2002) (citing Lloyd v. Butts, 343 Ark. 620, 37 S.W.3d 603 (2001)). In order to avoid the relitigation of factual issues already decided, courts will restrict evidence in a modification proceeding to facts arising since the issuance of the prior order. Campbell v. Campbell, 336 Ark. 379, 985 S.W.2d 724 (1999). Courts impose more stringent standards for modifications in custody than for initial determinations of custody in order to promote stability and continuity in; the life of the |achild. Alpkin v. Alphin, 364 Ark. 332, 219 S.W.3d 160 (2005). The party seeking modification of the custody order has the burden of showing a material change in circumstances. Id. Based on these more stringent standards for modifications of child custody and because Kincade failed to meet his burden to demonstrate a material change in circumstances, the circuit court clearly erred in its determination that a material change in circumstances occurred. II. McCoy’s Relocation With the above standards in mind, we must consider whether the circuit court’s finding that McCoy’s relocation to Fayette-ville constituted a material change in circumstances. In its . September 20, 2013 letter opinion, the. circuit court held as follows: [T]he parties entered into an agreement that was described as joint custody with the children spending each week during the school year with their father and the first three weekends of each month with their mother, the fourth weekend with their father (with their mother having time, with the children that week on Thursday night), and -the fifth weekend if there was one, with their mother. The Court approved this arrangement and the’terminology that it was joint custody based on the Court’s understanding that both parties resided in Mountain Home and this arrangement was essentially a true joint custody arrangement with the children spending roughly equ'al time with both parents. The testimony at trial established that the arrangement has never been as the Court believed it was. Within a month the; respondent, Ms. McCoy, had moved to Fayetteville. Once she did that the aspécts of this agreement that the Court understood made it joint custody no longer truly existed. The parties apparently immediately made adjustments and rearrangements to the Court’s order and have lived with the original agreement, with modifications, for the past nine years. It is the Court’s finding that the fundamental nature of the original agreement of “joint custody” changed with the potential to significantly affect the well being of the children. To their credit, the parties have made it work for the past eight, going on nine, years until it came to affect the lives of the children as they grew older. Here, a review of the record demonstrates that there was not a material change in circumstances. It is unclear how the “fundamental nature of the original agreement of ‘joint | incustody’ changed with the potential to significantly affect the well being of the children.” When McCoy moved to Fayetteville, the parties immediately modified the schedule to remove McCoy’s Thursday visitation; however, the remainder of the original order remained the same for almost nine years. The original child-custody agreement-stated as follows: The general scheme of physical custodial time with the children set out above is subject to change by agreement of the parties. The parties commit to being flexible with -each other so as to meet the children’s need to spend time with both of their parents. Based on the language of the original child-custody agreement, .McCoy and Kin-cade were free to modify the physical custodial time with the children, which they did for almost nine years. Pursuant to the original custody agreement, the parties agreed to be flexible in order to meet the children’s need to spend time with both parents. The parties’ physical custodial arrangement, for the last nine years, demonstrates their compliance with the original child-custody agreement. The custodial arrangement has been consistent for almost nine years; therefore, McCoy’s move to Fayetteville did not amount to a material change in circumstances. Further, the circuit court found that the “initial'move by the respondent to Fay-etteville by itself did not significantly change the circumstances contrary to the children’s best interests, but it did significantly change the fundamental nature of the custody arrangement back in 2005 by making it no longer anything resembling a ‘joint custody5 arrangement with shared equal time between the parents.” However,- the circuit court expressed its “admiration for the job done by both parents to this point” and expressed its belief that the “parents made the best of this changed circumstance until the present.” Ini cannot agree with the circuit court’s finding that McCoy’s move to Fayetteville constituted a material change in circumstances sufficient to warrant modification. As noted above, the circuit court'repeatedly praised McCoy and Kincade for their ability to modify the original agreement for almost nine years, thus it is unclear, in the almost nine-year span of modifications, when McCoy’s move to Fayetteville transformed into a material change of circumstances. McCoy’s move simply did not amount to a material change in circumstances. III. Maturation of the Children As to the circuit court’s second finding of a material change in circumstances, the circuit court stated, [T]he children haye matured to a point in their lives where their school activities and the social interaction with their classmates has become significantly more important to them than it was in 2004 when they were four and seven years old. Now at twelve and almost fifteen, these two young people are having a very difficult time living a normal teenage social life, and developing and maintaining friends and activities that are all oriented around the school and the church where they primarily live. It appears that they are forced by their parent’s previous agreement, to go away almost every weekend and not have time to socially interact with their friends, schoolmates and church activities that come up on the weekends starting on Friday night. The Court considers this social interaction between young people and the activities that social interaction revolves around (sports, attending games' and social events and church activities) to be essential to the healthy development of young people. During the custody hearing, the children clearly expressed a preference to spend more time with their father. However, in Hobby v. Walker, our court of appeals correctly explained that a “child’s preference is certainly a factor to be considered by the trial court in deciding whether a change of custody is in a child’s best interest; however, the court must first determine that the threshold requirement of whether a material change ' in the | ^circumstances of the parties has oc-cürred since the last ordesr of custody.” 2011 Ark. App. 494 at 9, 385 S.W.3d 331, 336. The fact that the children have matured to the point where school and social activities have become more important .to them does not amount to a material change in circumstances; - The circuit court .erroneously determined that the threshold requirement of a material change in circumstances had occurred. Because the threshold requirement of a material change in circumstances was not met in this case, it was erroneous for the circuit court to consider the - children’s preferences, which is a factor to be considered in deciding whether a change of custody is in the best interest of the children. Stated differently, because the threshold requirement of a material change in circumstances was not met, the circuit court clearly erred in considering the preferences of the children. Hobby, swpra. The majority states that “the evidence suggested that McCoy did not seem to grasp the importance of the children’s activities. Nor did she encourage participation by allowing the children to keep their social commitments in Mountain Home during her visitation.” It is unclear how the modified custody arrangement will resolve the children’s conflicts with their social and school activities. Under the original agreement, McCoy had the children during the first three weekends of the month and any fifth weekend. However, under the modified arrangement, McCoy was awarded standard every-other-weekend visitation. The modified arrangement will decrease the amount of time at McCoy’s by only one weekend per month plus the fifth weekend in months with an additional weekend. During his testimony, C.K admitted that he would still miss out on activities even if the time spent with his mother was decreased to every-other-weekend visitation. Thus, it is unclear how |13the modified arrangement will remedy the children’s alleged conflicts with social and school activities. Today the majority is establishing dangerous precedent. As noted above in Al-phin, courts impose more stringent standards in child-custody modifications than for initial determinations of custody. The more stringent standards are utilized in order to promote stability and continuity in the life of the child. Alphin, supra. As a child matures, his interests in social and school activities are constantly changing. If a modification of a child-custody agreement is allowed to proceed on this basis, there will never be finality in Arkansas child-custody agreements. The circuit court clearly erred in finding that McCoy’s move to Fayetteville and the maturation of the children rose to the level of a material change in circumstances warranting a modification of child custody. Therefore, I respectfully dissent. Hart, J. joins in this dissent. . Part of the rationale behind mediated agreements in divorce and custody matters is that parties are normally more satisfied about an arrangement they have agreed to as opposed to something imposed upon them, and thus more likely to cboperate within the spirit of the agreement rather simply comply with the letter of the decree.